Elwood McCLURE, Petitioner,

v.

Otto C. BOLES, Warden of the West Virginia State Penitentiary, Respondent.

Civ. A. No. 1400–W.

United States District Court
N. D. West Virginia,
at Wheeling.

Oct. 5, 1964.

Sam E. Schafer, Wheeling, W. Va., for petitioner.

Andrew J. Goodwin, Asst. Atty. Gen., for respondent.

PAUL, Chief Judge.

In January, 1958, the petitioner McClure was jointly indicted with two others, Dunbar and Vanater, by the grand jury of Kanawha County, West Virginia, for feloniously entering, without breaking, and with larcenous intent, a business establishment in Charleston, West Virginia. The penalty prescribed by statute for the offense is an indeterminate sentence of 1 to 10 years. Both McClure and Vanater had records of two or more previous convictions.

On arraignment, early in February, both Dunbar and Vanater entered guilty pleas, both having given statements to the police implicating McClure. McClure, represented by a competent and experienced lawyer employed to represent him, entered a plea of not guilty, and his case was severed and set for trial for February 17, 1958. On the appointed day McClure and his counsel appeared, a panel of 20 jurors was drawn and sworn, and, at this juncture, at McClure's request, he was permitted to withdraw his not guilty plea and enter a plea of guilty. The case was continued for sentencing to March 14, 1958. On the latter date, and without prior notice either to McClure or his attorney, the Prosecuting Attorney filed an information charging two prior felony convictions to McClure and invoking the habitual criminal statutes which make mandatory a life sentence under the circumstances. Both McClure and his attorney expressed anger and surprise, and moved to withdraw the former guilty plea. On denial of this motion, McClure put the prosecution to proof of the information by denying the former convic-

tions. The issues on the information were set for jury trial for April 23, 1958.

On April 23d the defense interposed various motions; for continuance, change of venue, and to recuse the Judge, all of which were denied. Defense counsel then renewed his motion to set the conviction aside and to permit McClure to withdraw his plea of guilty, based upon an alleged understanding between the Prosecuting Attorney and defense counsel that the recidivist statutes would not be invoked if McClure cooperated. Rather meager and somewhat equivocal details of the alleged "understanding" were given. The court overruled the motions and the Prosecuting Attorney made no effort to deny defense counsel's statements or to refute any inferences which might be drawn therefrom. Jury trial on the issues of the recidivist information followed; a verdict of guilty was rendered; and the life sentence which McClure is now serving was imposed.

So much for the facts that appear from the record. The remaining essential findings must be made from the testimony, based upon recollection, of the petitioner, his trial counsel and the Prosecuting Attorney.

In conferences with his attorney McClure consistently denied his guilt. He admitted that he was in the company of Dunbar and Vanater on the night of the robbery but insisted that he had no knowledge of their intent and criminal purpose until after they had accomplished it, and that he took no part in the event and no share of the proceeds. He appreciated the weakness of his position before the jury in view of the incriminating statments by his co-defendants and his prior criminal record, which might have been used to impeach his credibility. In spite of this, he wanted to stand trial but he was justifiably apprehensive that, in the event of a guilty verdict, he would be sentenced as a recidivist. He asked his attorney to confer with the Prosecuting Attorney to see if he could avoid this result by a plea of guilty.

McClure's attorney has testified that, in compliance with his client's request, he

conferred with the Prosecuting Attorney on several occasions, including one on the morning of February 17th. His memory was understandably vague about the exact words exchanged, but he was certain of the subject and of the substance. The Prosecuting Attorney advised him that the State's present intention was not to invoke the recidivist statutes against Vanater because Vanater had "cooperated" and gave him reason to believe that if McClure cooperated in the same way, McClure would receive the same treatment. He communicated the substance of the conversations to McClure and the guilty plea resulted. Incidentally, Vanater was later sentenced as a recidivist but this seeming inconsistency may be explained by the fact that, while out on bond awaiting sentence, Vanater committed another felony.

The Prosecuting Attorney denies any understanding and even any conversations, with respect to the sentence treatment of McClure. Attribution of infallibility to his memory is somewhat impaired, however, by the fact that, in 1960, in connection with the State's resistance to an application for a writ of certiorari to the Supreme Court to review the dismissal by the Supreme Court of Appeals of West Virginia of an application for habeas corpus involving these same matters, he made these same denials but included an assertion that McClure had never made any motion to withdraw his guilty plea; an assertion which is refuted by the record, and which the Prosecuting Attorney now admits was erroneous.

■ McClure's attorney's version is, on the other hand, completely consistent with the record. It receives some further support from the almost one month interval which elapsed between the conviction and the filing of the recidivist information. The statute (Michie's Code § 6131) requires that, when the Prosecuting Attorney has knowledge of former convictions, he "(g)ive information thereof to the court *immediately upon conviction* and before sentence." (Emphasis supplied.) There can be no doubt that the Prosecuting Attorney knew McClure was at least a second offender when he was convicted, as he was on parole from a prior sentence at that time, and both of the former convictions were in the same Intermediate Court of Kanawha County, where the records were readily available. While the information was filed "before sentence", by no stretch of the imagination can the filing be considered to have been made "immediately". The failure to comply with the letter and spirit of the statute may not have prejudiced McClure but it gives rise to a permissible inference that, at the time of McClure's withdrawal of his not guilty plea and the entry of his plea of guilty, the Prosecuting Attorney had every intention to abide by the claimed understanding. One may fairly infer further that the change of position was the result of the decision to file against Vanater and the desire of the court to sentence the two consistently.

■ A finding is compelled that the Prosecuting Attorney encouraged a justifiable belief that he would not seek out and inform of prior convictions if McClure plead guilty, but that he would do so if McClure stood trial and was convicted, and that this belief was a major factor in inducing McClure's guilty plea.

■ A plea so induced is "unfairly obtained" (Kercheval v. United States, 274 U.S. 220, 224, 47 S.Ct. 582, 71 L.Ed. 1009 (1927)). As such, it violates the principles of procedural fairness guaranteed by the Fourteenth Amendment and renders the judgment of conviction upon which it rests void on collateral attack by Federal habeas corpus. See, e. g., Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961); Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830 (1941); United States ex rel. McGrath v. LaVallee, 319 F.2d 308, 311 (2 Cir. 1963).

■ I am not unmindful of the carefully reasoned opinion of the District Court for the District of Oregon in Barber v. Gladden, 220 F.Supp. 308 (1963),

affirmed 327 F.2d 101 (9 Cir. 1964). That case points out that the threat of the use of a recidivist information unless a guilty plea is entered does not always result in an involuntary and coerced plea. This case differs from Barber, however, because the circumstances there justified a finding that the threat (or promise) was not a major factor in the decision to enter a plea of guilty, and, more importantly perhaps, no recidivist information followed the conviction upon the plea of guilty. This court agrees with the court in Barber that negotiations between the Prosecuting Attorney and defense counsel in which defense counsel seeks to be advised as to the position of the prosecuting authorities with reference to a recommended sentence; the acceptance of a plea to a lesser included offense; the dropping of some counts in a multicount indictment; or even with reference to the disposition of the Prosecuting Attorney to seek for and inform the court with respect to prior convictions, are not always to be deplored. The occurrence of such conferences and inquiries does not force a conclusion that a guilty plea has been unconstitutionally coerced or induced. Interdicting such negotiations or inquiries would force defense attorneys and their clients to work in the dark, would result in many unnecessary trials, and would redound to the detriment of the interests of both the State and the accused. It goes without saying, of course, that the court cannot be party to such inquiries or arrangements, and both sides must be fully cognizant that the independence of the court's discretion must remain unimpaired.

Recidivist statutes and their use or nonuse are, however, in a somewhat special category. While the statutes may not give the Prosecuting Attorney express discretion in this field, we all know that Prosecuting Attorneys do exercise discretion as to whether or not they will seek for and obtain evidence of prior convictions. (See the statistical data introduced in Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962)). It

may be all right for a Prosecuting Attorney, upon request of the defense attorney, to inform concerning his disposition in this regard, so that the defense attorney may properly advise with his client whether a trial should be forced, no matter how forlorn the chance of success, because of the serious consequences of a conviction to a second or third offender. But no such statement of intention upon the part of the Prosecuting Attorney should be conditioned upon how the accused pleads, and, above all, any intention thus expressed which is followed by a plea of guilty, should certainly be carried into effect.

An order of release, conditioned upon the State's right to retry, may be entered.