CRESCI, Plaintiff in error, v. STATE, Defendant in error.
TOLFA, Plaintiff in error, v. STATE, Defendant in error.

*September 8—October 3, 1967.*

288

For the plaintiffs in error there was a brief by *Frederick A. Muth, Jr.,* attorney, and *Whyte, Hirschboeck, Minahan, Harding & Harland* of counsel, all of Milwaukee, and oral argument by *Mr. Muth.*

For the defendant in error the cause was argued by *E. Michael McCann,* assistant district attorney of Milwaukee county, with whom on the brief were *Bronson C. La Follette,* attorney general, and *Hugh R. O'Connell,* district attorney.

CURRIE, C. J.   In *State v. Reppin* [1] this court adopted the "manifest injustice" test in regard to the withdrawal of guilty pleas. The court cited with approval the standards included in the tentative draft on Standards Relating to Pleas of Guilty prepared by the American Bar Association Project on Minimum Standards for Criminal Justice. One such standard provides:

"(a) The court should allow the defendant to withdraw his plea of guilty or nolo contendere whenever the defendant, upon a timely motion for withdrawal, proves that withdrawal is necessary to correct a manifest injustice.

"  . . .

"(ii) Withdrawal is necessary to correct a manifest injustice whenever the defendant proves that:

"  . . .

"(3) the plea was involuntary . . . ." [2]

---

[1] (1967), 35 Wis. 2d 377, 385, 386, 151 N. W. 2d 9.

[2] American Bar Association Project on Minimum Standards for Criminal Justice—Pleas of Guilty (Tentative Draft, February, 1967), Part II, pp. 9, 10.

In the instant cases the issue of manifest injustice is confined to the question of the voluntariness of defendants' pleas of guilty.

The defendants contend that their pleas were involuntary because (1) they were deprived of their right to counsel and kept incommunicado for a lengthy period of time after arrest despite repeated requests to contact their attorneys; and (2) they were, suddenly on the day of trial, without prior consultation with their attorneys, presented with a plea bargaining proposal by the district attorney to plead guilty in exchange for a lesser sentence, after he had conferred in chambers with the trial judge and defense counsel concerning a change of plea.

### Unreasonable Detention.

Defendants Cresci and Tolfa were allegedly held incommunicado for forty-two and thirty-four hours respectively before being brought before a magistrate. The trial court in its memorandum decision on the motions to withdraw the pleas of guilty did not resolve the dispute in the testimony with respect to whether during this period defendants requested permission to contact counsel and were denied such requests. For the purpose of this appeal we will assume such requests were made and denied. Defendants did have counsel of their own choice by the time the preliminary hearing was held later in the month of their arrest.

The issue is whether there is any causal connection between the incommunicado detention and denial of right to contact counsel during the first week of March, 1965, and the change of pleas from not guilty to guilty on August 4, 1965, five months later. We deem that *Pulaski v. State* [3] is controlling on this issue. In that case even

[3] (1964), 23 Wis. 2d 138, 126 N. W. 2d 625.

though this court deplored the defendant's incommunicado detention for thirty-six hours, it could find no causal connection between a detention on March 28th and 29th and a plea of guilty on May 5th, particularly when the defendant had pleaded not guilty at the arraignment on April 18th. The court stated:

"This [the arraignment] was on April 18th. Between this date and May 5th when the defendant changed his plea to a plea of guilty we find nothing in the record which coerced the defendant or rejuvenated any fear which caused him to change his plea. We find no causal connection between the incommunicado detention and his treatment by the police on March 28th and 29th which caused him to change his not-guilty plea." [4]

Likewise in the instant case, defendants had pleaded not guilty at their arraignment after having been represented by counsel at their preliminary hearings. It would be stretching the court's credulity to the breaking point to hold that the prior incommunicado detention had any causal effect on the later change of pleas.

### Involuntary Coercion as a Result of Plea Bargaining.

In the instant case, while the trial judge properly did not participate in the plea bargaining, defendants received the identical sentences which the deputy district attorney promised to, and did, recommend in return for the entry of the guilty pleas.[5]

---

[4] *Id.* at page 146.

[5] It has been stated by the authorities that roughly 90 percent of all criminal convictions in the United States stem from pleas of guilty. Newman, Conviction—The Determination of Guilt or Innocence Without Trial (Little-Brown, 1966), p. 3; President's Commission on Law Enforcement and Administration of Justice, Task Force Report: The Courts (1967), p. 4. Plea discussions and plea agreements have been recognized as proper, when certain

This court's holding in *Myartt v. State* [6] is relevant. In that case the defendant pleaded guilty in exchange for the prosecutor's promise to recommend probation. The defendant was informed by his counsel that such recommendation was not binding on the court. The prosecutor kept his promise. The trial judge, who had not participated in the bargaining, did not follow the recommendation and imposed a prison sentence. This court held that the defendant had not been coerced or improperly induced to plead guilty by the plea bargaining.

We agree with the statement made by the federal court of appeals for the Ninth circuit in *Cortez v. United States*.[7] The court stated:

"The important thing is not that there shall be no 'deal' or 'bargain,' but that the plea shall be a genuine one, by a defendant who is guilty; one who understands his situation, his rights, and the consequences of the plea, and is neither deceived nor coerced." [8]

Defendants do not urge that all pleas of guilty arrived at as a result of plea negotiations are inherently coercive but contend that the "last minute" nature of their plea bargaining rendered their pleas involuntary. However, before accepting the prosecutor's proposal, the defendants did confer with their own counsel who recommended that such acceptance was advisable.

Counsels' recommendations were grounded on the fact that, not only had eyewitnesses to the two robberies

safeguards are observed, by the American Bar Association Project on Minimum Standards for Criminal Justice in its Tentative Draft of Standards Relating to Pleas of Guilty issued February, 1967, Part III, at pp. 10 *et seq.* These proposed standards relating to plea agreements have recently been favorably cited by the Fifth Circuit Court of Appeals and the New Jersey Supreme Court. *Brown v. Beto* (1967), 377 Fed. 2d 950; *State v. Taylor* (1967), 49 N. J. 440, 231 Atl. 2d 212.

[6] (1964), 25 Wis. 2d 634, 131 N. W. 2d 371.

[7] (1964), 337 Fed. 2d 699.

[8] *Id.* at page 701.

identified defendants at the preliminary examination, but that the alleged driver of their getaway car was also prepared to testify against them and to implicate them as participants. Thus, the chances of securing an acquittal before a jury were almost hopeless, and each defendant was faced with a possible maximum sentence of sixty years in prison. With these odds against them, defendants, in all probability, made a wise decision in deciding to plead guilty in return for the prosecutor's recommendation of maximum concurrent sentences of ten years each.

When a plea of guilty has been entered, the trial judge must objectively determine the voluntariness of the plea.[9] After defendants had entered their guilty pleas, in response to questions from the court or counsel, defendant Cresci stated that he had discussed the change of plea with his attorney and that there had been no promises or threats; that he had changed pleas of his own free will; and that he had a high-school education. Likewise, defendant Tolfa stated that he had discussed the matter with his attorney, that no promises or threats were made to him, and that he voluntarily changed his plea. The court asked Tolfa if he understood that a prison sentence could result from his guilty plea. Tolfa answered in the affirmative. Nothing in the record indicates that Cresci had left the court at this time, and it is only reasonable to assume he heard the court's question. Also, while Cresci was being questioned, DeBrozzo intervened with the following statement:

"In each instance I want to say that the defendants are aware that each charge carries up to twenty-five years [actually it was 30 years] to the State Prison at Waupun."

[9] See *State ex rel. Burnett v. Burke* (1964), 22 Wis. 2d 486, 126 N. W. 2d 91. *Cf.* Standard 1.5 of Tentative Draft of Standards Relating to Pleas of Guilty, *supra*, footnote 2, at pages 7, 8.

The trial court, in denying the motions to withdraw the pleas, found that defendants' pleas had been entered "freely, voluntarily and understandingly." We find nothing in this record which would require this court to hold to the contrary as a matter of law. The shortness of time, within which defendants were obliged to make their decision with respect to accepting or rejecting the proposal resulting from the plea negotiations between defense counsel and DeBrozzo, was not coercive in the sense of rendering defendants' guilty pleas involuntary.[10]

*By the Court.*—Order affirmed.

---

[10] Last minute plea negotiations have been condemned by the President's Commission on Law Enforcement and Administration of Justice in its Report, The Challenge of Crime in a Free Society (Feb. 1967), p. 135, wherein it declared: "Negotiations should be more careful and thorough, broader, and preferably held early in the proceedings. It does not contribute to the soundness of the practice when negotiations are held on the eve of trial or in the public atmosphere of the courtroom hallway." However, this criticism does not deal with the aspect of the problem here confronting the court, *viz.*, the voluntariness of the plea.