THOMAS M. MALONEY

*v.*

IRA M. COINER, *Warden,* SUCCESSOR TO
OTTO C. BOLES, *Warden,* WEST VIRGINIA PENITENTIARY

(No. 12737)

Submitted September 24, 1968. Decided November 19, 1968.

*C. Donald Robertson,* Attorney General, *Leo Catsonis, James G. Anderson III,* Assistant Attorneys General, for appellant.

*David T. Kennedy,* for appellee.

BROWNING, JUDGE:

Thomas M. Maloney, sometimes hereinafter referred to as petitioner, was convicted on his plea of guilty of the offense of murder in the second degree in the Criminal Court of Raleigh County on October 19, 1964. Prior to

sentencing, an information reciting one previous felony conviction was filed against him, he admitted he was the person named in such previous conviction and on November 5, 1964, he was sentenced to a term of from 5 to 18 years on the principal offense, with an additional 5 years for the previous conviction, making an indeterminate term of from 5 to 23 years.

On March 1, 1967, petitioner filed his petition for a writ of habeas corpus ad subjiciendum in the Circuit Court of Raleigh County alleging that his imprisonment under such sentence is unlawful for the following reasons: (1) his plea of guilty was coerced; (2) he was denied the effective assistance of counsel when the trial court refused a continuance for the purpose of allowing additional time to prepare for defense; (3) the indictment sets out an erroneous date on which the offense was allegedly committed; (4) petitioner was not duly cautioned as required by the recidivist statute; and (5) the improper addition of the 5 year term after he had been sentenced to 5 to 18 for the principal offense. The Circuit Court awarded the writ prayed for, appointed counsel to represent petitioner and set the case for hearing.

At the hearing, petitioner testified, insofar as it is deemed pertinent here, that on the morning of October 19, 1964, the date his case was set for trial, the two attorneys who had been appointed to represent him caused him and his wife to be escorted to a back room of the courthouse where they were informed that the prosecuting attorney had agreed to let him plead guilty to murder in the second degree, with information as to only one prior conviction; if he did not plead guilty, then, if he were found guilty of anything, even manslaughter, the prosecutor would inform as to two prior convictions and he would receive a life sentence; he maintained his innocence of "murder" but agreed to plead guilty of murder in the second degree because of the threat of the life sentence; and, it was stated to him that he had only the choice of serving perhaps 6 or 7 years if he pleaded guilty, with information as to only one previous conviction, whereas conviction of any felony within the terms of the indictment, with infor-

mation as to two previous convictions, would result in minimum service of fifteen years.

Trial counsel for the petitioner, in a joint affidavit summarizing their efforts in his behalf in investigating the charge against him and preparing for trial, stated that on the morning of the trial ". . . Counsel further considered the matter in this wise, that if a verdict of voluntary manslaughter would be returned in this case, which would be equivalent of a moral victory, at least to the defendant, but the State had in addition to that, two prior convictions which they would add to the conviction of voluntary manslaughter, which would cause the defendant to serve an additional length of time beyond the time for which the Prosecuting Attorney made us an offer; in other words, if the defendant were convicted of voluntary manslaughter with information of two previous convictions, he would come within the habitual criminal act and receive a life sentence; that Counsel related all this to the defendant in a private chamber in the Courthouse, where he was seated with his wife, with only a Deputy Sheriff some feet away looking out the window and not concerned with this matter at all and said nothing about it; that Counsel left this private chamber and for a period of approximately forty-five minutes to an hour, Thomas Maloney and his wife discussed the matter, and after a time Counsel returned to the room and talked with the defendant and he intimated that he would be willing to enter a plea to murder in the second degree, well knowing that information of one prior conviction would be also sought by the State; . . . that the information of the plea was then related to the Prosecuting Attorney, and after some further conferences, the defendant entered his plea, freely and voluntarily, as shown by the record. . . ."

With regard to his admission of identity, the Court advised the petitioner that an information had been filed against him charging him with a previous felony conviction, stating the details thereof, and said: ". . . Thomas Maloney, it becomes mandatory upon the Court to ask you whether or not you are the same person mentioned in this information.

"Answer: Yes, sir, I am.

"The Court: If your answer is in the affirmative it becomes necessary and mandatory upon the Court to impose an additional five-year sentence upon the sentence that the Court is ready to pronounce on the plea to the charge of murder in the second degree. Are you that same person mentioned in this information?

"Answer: Yes, sir."

The Circuit Court of Raleigh County found against the petitioner on four of the grounds assigned in his petition for habeas corpus but found that his plea of guilty had been coerced and ordered the state to either afford him a new trial or release him, to which order this Court granted an appeal on application of the State.

The primary question before this Court in this case is one of first impression in this jurisdiction and for that reason as hereinafter noted all of the cases cited by the appellant and the appellee will be cited—although not all are in point or even persuasive—for the benefit of the trial judges of this state who exercise criminal jurisdiction, the prosecuting attorneys and members of the bar who are engaged in criminal practice. No one can disagree with the statement of the attorney general, counsel for respondent, that a plea of guilty to a lesser offense charged in an indictment, entered by a defendant who understands his rights and the consequences of his plea and who is not threatened, coerced or deceived by a proposal by the prosecuting attorney, the acceptance of which is recommended by his counsel, that in exchange for such plea the prosecuting attorney will refrain from including in an information to be filed after the court has accepted the plea more than one previous felony conviction, is not improper and such arrangement does not invalidate and render void the sentence of the court. These are the cases cited by the attorney general in support of that statement: *Cresci* v. *State* (Wis., 1967), 152 N. W. 2d 893; *Smith* v. *People* (Col., 1967), 428 P. 2d 69; *State* v. *Robbins* (N. M., 1967), 427 P. 2d 10; *Rose* v. *Gladden* (Ore., 1967), 433 P. 2d 612; *Smith* v. *Wilson* (9th Cir., 1967), 373 F. 2d 504; *U. S.* v. *Ferrara*

(2nd Cir., 1967), 377 F. 2d 16; *Commonwealth* v. *Maroney* (Pa., 1966), 223 A. 2d 699; *McCoy* v. *United States* (D. C. Cir., 1966), 363 F. 2d 306; *United States ex rel. McGrath* v. *LaVallee* (2nd Cir., 1963), 319 F. 2d 308; *Martin* v. *United States* (5th Cir., 1958), 256 F. 2d 345; *United States ex rel. Elksnis* v. *Gilligan* (S. D. N. Y., 1966), 256 F. Supp. 244, 255; *McClure* v. *Boles* (N. D. W. Va., 1964), 233 F. Supp. 928, 931; *Anderson* v. *State of North Carolina* (W. D. N. C., 1963), 221 F. Supp. 930; *Barber* v. *Gladden* (D. Ore., 1963), 220 F. Supp. 308, 314, aff'd., 327 F. 2d 101; *State* v. *Maberry* (1963), 93 Ariz. 306, 380 P. 2d 604; *Hinckle* v. *State* (Del., 1963), 189 A. 2d 432; *People ex rel. Valle* v. *Bannan* (1961), 364 Mich. 471, 110 N. W. 2d 673; *People* v. *Griffin* (1960), 7 N. Y. 2d 511, 199 N. Y. S. 2d 674, 166 N. E. 2d 684; *People* v. *Picciotti* (1958), 4 N. Y. 2d 340, 175 N. Y. S. 2d 32, 151 N. E. 2d 191.

On the other hand there can be no disagreement with the contention of counsel for the petitioner that a plea of guilty by a defendant to a charge in an indictment induced by coercion, promises, or deceit by the prosecuting attorney is invalid as being violative of the due process clauses of the constitutions of this state and the United States. These are the cases cited by counsel for the petitioner, only one of which, the *McClure* case, will be discussed hereinafter: *United States* v. *Jackson* (April, 1968), 88 Sup. Ct. 1209; *United States* v. *Ferrara* (2nd Cir., 1967), 377 F. 2d 16; *Smith* v. *Wilson* (9th Cir., 1967), 373 F. 2d 504; *United States ex rel. Elksnis* v. *Gilligan* (S. D. N. Y., 1966), 256 F. Supp. 244; *McCoy* v. *United States* (D. C. Cir., 1966), 363 F. 2d 306; *Barber* v. *Gladden* (D. Ore., 1963), 220 F. Supp. 308; *McClure* v. *Boles* (1964), 233 F. Supp. 928; *Anderson* v. *State of North Carolina* (W. D. N. C., 1963), 221 F. Supp. 930; *United States ex rel. McGrath* v. *LaVallee* (2nd Cir., 1963), 319 F. 2d 308; *Machibroda* v. *United States* (1962), 368 U. S. 487, 82 Sup. Ct. 510, 7 L. Ed. 2d 473; *Martin* v. *United States* (5th Cir., 1958), 256 F. 2d 345; *Kercheval* v. *United States* (1927), 274 U. S. 220, 47 Sup. Ct. 582, 71 L. Ed. 1009.

Of course, no principle of law can exist in a vacuum and in order to determine which of the above stated prin-

ciples are applicable to this case the facts are controlling and, for that reason, they will be reviewed chronologically. The petitioner was arrested on the 19th day of September, 1964, charged with being drunk in a public place and for assault and battery. He was released on recognizance for these charges, being rearrested three days later and charged with murder. Although this record reveals very little of the circumstances surrounding the events which occurred in the Raleigh County Town of Eccles on the 19th day of September, it is apparent that the petitioner and another man, who was subsequently jointly indicted with petitioner for murder, had assaulted an elderly man on the 19th and he died as a result of the attack on the 22nd. On the 24th day of September petitioner was bound over to the action of the Raleigh County grand jury and on the 5th day of October following was indicted by that body. The indictment charged that "Lemuel Richardson and Thomas Maloney did . . . murder . . . one Lee Smith." On that same day petitioner was brought before the Criminal Court of Raleigh County and advised of the indictment that had been returned against him. The court being informed that petitioner did not have counsel and had not the means to employ counsel informed petitioner that counsel would be appointed for him. The petitioner did not plead to the indictment on that occasion. On the 7th day of October, E. Carl Meadows, a member of the Raleigh County Bar, was appointed counsel for the petitioner and two days later, apparently because of the seriousness of the charge, an additional member of that bar, George L. Ballard, whom the record shows was a veteran trial lawyer of that county, was appointed to represent him.

The record shows without serious contradiction that these two attorneys immediately began to perform their duties as counsel for the petitioner and on the following day, Saturday, October 10, spent most of the afternoon discussing the case with the petitioner in the Raleigh County jail. At that time a list of witnesses was prepared all of whom were subsequently subpoenaed to testify in behalf of the petitioner. The complete file of the prosecuting attorney showing the results of the investigation of the

police officers, statements of the petitioner and particularly the co-defendant, Richardson, as well as statements of other witnesses who were present at the scene of the alleged crime had been supplied previously to counsel who, after permitting the defendant to read all of this, discussed the situation with him at length. A week later, on October 17, petitioner's attorneys spent most of the day conferring with the defendant and in making preparations generally for his trial, including the preparation of fifteen or twenty instructions stating the law of the case most favorable to the petitioner. On Sunday, October 18, both the petitioner's counsel visited the scene of the alleged crime at Eccles which is approximately eight miles from Beckley, the county seat, and interviewed the witnesses that had been subpoenaed by the state as well as others. One of counsel for the petitioner carried a camera and took at least three photographs of the scene which were to be used in the trial of the case. That evening counsel returned to the Raleigh County Jail in Beckley and informed the defendant that they were ready for trial, which was set for the following morning at 9:30 a.m. It might be well to repeat the evidence of counsel later taken in the habeas corpus hearing in which they state that "after talking to numerous witnesses, of which almost no one was in favor of the defendant or condoned his conduct, that a very brittle and hostile attitude was felt in the town of Eccles over this case, and Counsel further considered the matter in this wise, that if a verdict of voluntary manslaughter would be returned in this case, which would be equivalent of a moral victory, at least to the defendant, but the State had in addition to that, two prior convictions which they would add to the conviction of voluntary manslaughter, which would cause the defendant to serve an additional length of time. . . ." Of course, what that meant, should it come to pass, was that the trial judge would mandatorily be required to sentence the petitioner for the remainder of his life as a recidivist and he would not be eligible for parole until he had served at least fifteen years.

On the morning of the trial all of this information was imparted to the petitioner and his wife, they being seated

in a small anteroom off of the criminal courtroom in the courthouse, the only other person present being Clarence Worley, a deputy sheriff, who made an affidavit as to his version of what transpired, which was made a part of the record in this case. At that time counsel for the petitioner informed him and his wife that they had been informed that "if a plea of murder in the second degree was entered, with information of one prior conviction, that the State 'might' accept said plea," and if that were done the defendant would be sentenced to a period of 5 to 23 years in the penitentiary and that he would be eligible for parole in less than one-half the time than if he were sentenced for life as a recidivist. The trial judge in this proceeding noted that approximately an hour and forty-five minutes was spent in consultation before the defendant came into the courtroom to plead. Counsel, in their affidavits, stated that after reciting all of this information to the petitioner and his wife they left them alone for at least forty-five minutes to make a determination of whether he would plead guilty to murder in the second degree with the understanding that only one previous conviction would be alleged against him in the information or whether he would go to trial and risk a life sentence if he were convicted of the least felony charged in the indictment. Counsel stated that "defendant seemed to be relieved . . . and in fact thanked them very warmly" when they returned to the anteroom, both he and his wife having agreed that it would be best for him to plead guilty to murder in the second degree in accordance with the understanding with the prosecuting attorney. This information was relayed to the prosecuting attorney, the parties returned to the courtroom and the following proceedings transpired:

"THE COURT: Mr. Sparacino, are you ready to proceed?

"MR. SPARACINO: Yes, Your Honor. Mr. Maloney is ready to enter his plea.

"THE COURT: Very well. He will approach the bench with his counsel.

"The Defendant, Maloney, Bailiff Martin, Mr. Meadows, and Mr. Ballard stand before the Court.

"THE COURT: Thomas Maloney, your attorneys, Mr. Ballard and Mr. Meadows, have advised you as to the nature and effect of your plea? What judgment the Court could pronounce?

"MR. MALONEY: Yes, sir.

"THE COURT: With that knowledge, it is your desire to enter your plea freely and voluntarily?

"MR. MALONEY: I plead to second degree.

" (Defendant spoken to by counsel. Then he answered)

"MR. MALONEY: Yes, sir.

"THE COURT: Listen to the indictment.

"THE *WITNESS*: The indictment was read. You don't want me to read that, do you?

"MR. CANTERBURY: No. That is not necessary.

"THE COURT: Thomas Maloney, upon your plea of guilty to the charge of murder in the second degree, as contained in Indictment 4922 just read to you by the Clerk, the Court finds you guilty of murder in the second degree, and takes until November 5, at eleven o'clock, to pass judgment. You are remanded to jail."

On the 2nd day of November, 1964, the trial court imposed a sentence upon the petitioner of 5 to 23 years upon his plea theretofore entered to murder in the second degree and upon an information filed by the prosecuting attorney which alleged only one previous conviction, in accordance with the arrangement between the parties as heretofore related. The testimony of the petitioner and his wife is in conflict with all of the other witnesses, it being their contention that the petitioner refused to accept the offer made by the prosecuting attorney because he was not guilty, that his attorneys spent only "a short time" in the anteroom, and demanded more than once that a decision be made inasmuch as the trial judge was impatient and would not "linger much longer." The trial judge, in this proceeding, with regard to the conflict of evidence as to what transpired on the morning the plea was entered found that "the counsel involved were extremely competent, and were experienced, and performed their duties in a pro-

fessional manner, and competently represented the then defendant's interests." He also found that a period of time of at least one hour and forty-five minutes was spent in advising with the petitioner and his wife before the plea was entered.

There can be no denial of the fact that the defendant found himself on that October 19th morning in the anteroom of the criminal courtroom in a very precarious predicament. However, it was not the judge of that court, the prosecuting attorney, or his two attorneys who positioned him between Scylla and Charybdis. It resulted from his having been convicted of two felonies in this state at some time prior to that date and, after being released from prison on the second one, having joined with his co-defendant Richardson to cause the death of an elderly man in the town of Eccles. It is the view of this Court that the trial court was clearly wrong in his interpretation of the evidence in this case, assuming that there was some conflict, and that the evidence and the actions of the parties clearly reveal that the defendant did accept what at that time appeared to him to be the best way out of his predicament and of his own volition agreed to plead guilty to second degree murder upon the condition that only one previous felony would be alleged against him in the information. His appearance before the judge and his voluntary plea immediately after the end of the conference in the anteroom seem conclusive of that fact. We conclude that there is a complete lack of evidence to establish an involuntary or coerced plea by the petitioner and the evidence is uncontradicted that the prosecuting attorney kept his part of the bargain. This case, therefore, is distinguishable upon the facts from *McClure* v. *Boles*, 233 F. Supp. 928, although in his able oral opinion, which was transcribed and made a part of the record, the trial judge relied heavily upon it and in this Court so has counsel for the petitioner. The difference succinctly stated is this: In the *McClure* case the judge found that the prosecuting attorney bargained falsely with the petitioner not to file an information alleging two previous convictions if the defendant would plead guilty and, after acceptance of the plea, filed an informatin containing two

previous convictions. No further comment is necessary to show the difference between that case and the instant one.

As to the second issue, that is, the validity of the additional five years given the defendant as the result of the information filed, some procedural as well as substantive questions might arise in view of many previous decisions of this Court and might require the interpretation of the so-called post conviction statute and its applicability to those decisions. The final judgment order in this case clearly states that the petitioner was "duly cautioned" before sentence was pronounced upon him, which, as heretofore stated, included an additional five years on one previous felony conviction. Compare, *State ex rel. Lovejoy* v. *Skeen, Warden,* 138 W. Va. 901, 78 S. E. 2d 456; but see, *State ex rel. Browning* v. *Tucker, Warden,* 142 W. Va. 830, 98 S. E. 2d 740. For a comprehensive discussion of this question see also, *State ex rel. Smith* v. *Boles, Warden,* 150 W. Va. 1, 146 S. E. 2d 585. However, we do not reach these questions inasmuch as the attorney general has confessed error in that regard in this Court and the judges thereof unanimously have accepted such profession of error. Therefore, we find that the additional five years imposed upon the defendant pursuant to the filing of the information was invalid. However, upon the principal question we are of the view that the trial court was clearly wrong in holding that the petitioner was coerced or threatened into entering a plea of guilty to the charge of murder of the second degree and his finding in that regard is reversed. The other attacks upon the legality of petitioner's detention we deem without merit and as to those the judgment of the trial court is affirmed.

The case will be remanded to the Circuit Court of Raleigh County for the entry of a judgment consistent with the views expressed in this opinion.

*Affirmed in part;*
*reversed in part;*
*and remanded with directions.*