**James Wilbur CARR, Petitioner,**

v.

**Ira M. COINER, Warden of the West Virginia State Penitentiary, Respondent.**

**Civ. A. No. C–68–34–E.**

United States District Court
N. D. West Virginia.

March 3, 1969.

**1060**

W. Del Roy Harner, Elkins, W. Va. (Court-appointed), for petitioner.

C. Donald Robertson, Atty. Gen., of West Virginia, Morton I. Taber, Asst. Atty. Gen., Charleston, W.Va., for respondent.

MAXWELL, Chief Judge.

Petitioner is presently incarcerated in the West Virginia State Penitentiary at Moundsville following his conviction in the Circuit Court of Randolph County, West Virginia. On May 2, 1966, Petitioner entered a guilty plea to one count of uttering a forged check. An indeterminate sentence of not less than one nor more than ten years in the penitentiary was then pronounced.

Pursuant to 28 U.S.C.A. § 2241 et seq., Petitioner applied to this Court for federal habeas corpus relief. The issues raised insist that the indictment was defective and, further, that Petitioner was placed in jeopardy three times for the same offense. Petitioner also urges that his guilty plea was involuntary and alleges that he was ineffectively represented by counsel. Petitioner was granted an evidentiary hearing here; and he appeared before this Court on September 16, 1968, with counsel appointed by this Court, and the plenary hearing on the merits of his contentions was held.

Petitioner was indicted by a grand jury for one count of forging and one count of uttering a check. On April 25, 1966, he appeared before the trial court for arraignment. Because he was without counsel and was pecuniarily unable to employ counsel, the court appointed an attorney to represent Petitioner. Later that same day Petitioner entered a plea of not guilty to both counts of the indictment.

On May 2, 1966, Petitioner appeared before the trial court with counsel and moved to change his plea to guilty to uttering. This plea was accepted by the court, and Petitioner was sentenced to confinement in the West Virginia Penitentiary for the statutory indeterminate term of not less than one nor more than ten years. Later during that day, in the afternoon hours, the trial court recalled Petitioner and his attorney and informed Petitioner that the court had learned there was reason to believe Petitioner's earlier entered guilty plea may have been influenced by an alleged promise from the prosecuting attorney not to institute recidivist proceedings. Because of the possibility of irregularity involving the plea, the court set aside the earlier imposed sentence, terminated the plea of guilty, and advised Petitioner that no promises regarding the nonfiling of otherwise appropriate recidivist prosecution could be made. Petitioner again entered a plea of guilty to uttering and the court imposed an indeterminate sentence of not less than one nor more than ten years in the penitentiary with credit for time spent in jail, the sentence under which Petitioner is presently incarcerated and of which he complains.

On June 6, 1966, Petitioner wrote to the state trial court to question that court's records which show that he was convicted of forgery when, in fact, he entered a plea of guilty to uttering. Petitioner appeared before the court on June 27, 1966, with counsel, and the court corrected the order of sentence to read that Petitioner had been convicted of uttering.

The scope of review of state indictments under federal habeas corpus is limited to the sufficiency of the indictment to give the trial court jurisdiction over the offense. Knewel v. Egan, 268 U.S. 442, 45 S.Ct. 522, 69 L.Ed. 1036 (1925); Matter of Gregory, 219 U.S. 210, 31 S.Ct. 143, 55 L.Ed. 184 (1911).

Petitioner here contends that the indictment is defective in that the version of the alleged forged and uttered check set forth in the indictment contains a discrepancy between the numerical and written designations of the amount of the check alleged to have been forged and uttered. This defect, however, is not such that the trial court was deprived of jurisdiction over the offense or such that a prosecution upon the indictment could not be sustained. The challenged indictment charges Petitioner with the elements of the offense of uttering as defined by West Virginia Code § 61–4–5 (Michie 1966): the attempt to employ as true a writing known by Petitioner to have been forged to the prejudice of another's rights. By this indictment Petitioner was apprised of the nature and character of the charge against him and is sufficiently protected against subsequent charges for the same offense. Snead v. Smyth, 273 F.2d 838 (4th Cir. 1959). The indictment herein being sufficient to give the trial court jurisdiction over the alleged offense, this Court is without authority to consider the effect of any minor, non-prejudicial defect not challenged prior to Petitioner's conviction.

 Petitioner contends that he was three times placed in jeopardy of his liberty by being sentenced on three occasions for the same offense. The final proceedings held on June 27, 1966, the alleged third time Petitioner was placed in jeopardy, present no question of double jeopardy or deprivation of constitutional rights, for Petitioner was not sentenced at that time nor put in danger of having a different sentence imposed. The proceedings constituted nothing more than the correction of a clerical error in the commitment order so that the order, which erroneously recorded that Petitioner had been convicted of "forgery," would read that he was convicted of "uttering," the offense to which he entered a guilty plea on May 2, 1966, an entirely proper correction, made at the request of Petitioner. "Courts have inherent power independent of statute to correct such clerical errors and slips of inadvertence." State v. Hamrick, 74 W. Va. 145, 146, 81 S.E. 703, 704 (1914).

 The contention that Petitioner was put in jeopardy a second time on May 2, 1966, when the trial court called Petitioner back and rejected his earlier given plea, does not reach federal constitutional proportions when viewed from the factual development of this case. The extent to which the Fifth Amendment prohibition against double jeopardy becomes binding upon the states through the Fourteenth Amendment, if at all, is an unsettled question of constitutional law.[1] It is clear, however, that multiple re-prosecutions or trials can violate fundamental principles of liberty and justice protected by the Due Process

---

1. In Palko v. Connecticut, 302 U.S. 319, 323, 58 S.Ct. 149, 151 (1937), The Supreme Court of the United States refused to hold that "[w]hatever would be a violation of the original bill of rights (Amendments 1 to 8) if done by the federal government is now equally unlawful by force of the Fourteenth Amendment if done by a state."

See the dissenting opinions of Mr. Justice Black and Mr. Justice Brennan, with which the Chief Justice and Mr. Justice Douglas concur, in Bartkus v. Illinois, 359 U.S. 121, 150, 164, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959). See also the dissenting opinion of Mr. Justice Fortas, with which the Chief Justice and Mr. Justice Douglas join, in Cichos v. Indiana, 385 U.S. 76, 80, 87 S.Ct. 271, 17 L.Ed. 2d 175 (1966), rehearing denied 385 U.S.

1020, 87 S.Ct. 699, 17 L.Ed.2d 559 (1966).

The Second Circuit discussed the Fifth Amendment in relation to the Fourteenth Amendment and the doctrine of selective incorporation in United States ex rel. Hetenyi v. Wilkins, 348 F.2d 844 (2nd Cir. 1965), cert. denied 383 U.S. 913, 86 S.Ct. 896, 15 L.Ed.2d 667 (1966). In Patton v. State of North Carolina, 381 F.2d 636 (4th Cir. 1967), cert. denied 390 U.S. 905, 88 S.Ct. 818, 19 L.Ed.2d 871 (1968), the Fourth Circuit indicated its accord with *Hetenyi*. See footnote 20, page 643.

For a further discussion of the relation of the Fifth Amendment to the Fourteenth Amendment, see Annot., 18 L.Ed. 2d 1388, 1403.

Clause of the Fourteenth Amendment where they reach the point of cruel harassment. Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937); Crisafi v. Oliver, 396 F.2d 293 (9th Cir. 1968); cert. denied, 393 U.S. 889, 89 S. Ct. 208, 21 L.Ed.2d 167 (1968); Barnett v. Gladden, 375 F.2d 235 (9th Cir. 1968). The question of whether such a Due Process violation exists depends upon the facts of the particular case and is appropriately raised through federal habeas corpus proceedings. Barnett v. Gladden, *supra.*

The facts in this case do not support any finding of fundamental unfairness.[2] Petitioner had entered a guilty plea which, the trial court later learned, may have been improperly induced by a promise that no recidivist proceedings would be brought against him. Such an inducement to plead guilty would render the plea involuntary and the resultant conviction void, if the plea was based on the inducement. Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L. Ed.2d 473 (1961); Bailey v. Mac-Dougall, 392 F.2d 155 (4th Cir. 1968), cert. denied 392 U.S. 922, 88 S.Ct. 2323, 20 L.Ed.2d 1411 (1968); McClure v.

Boles, 233 F.Supp. 928 (N.D.W.Va. 1964). Upon learning that the plea may have been improper, the trial court, in an exercise of judicial caution, took action to guarantee Petitioner his fundamental constitutional right to a jury trial and his privilege against self incrimination—the trial court demonstrated a conviction not to accept an involuntary plea.[3] Such action, which protected rather than prejudiced Petitioner's position, does not amount to cruelty, vexation or harassment in any sense.[4]

Had the trial court allowed the questionable plea to stand, Petitioner would have been forced to seek appellate or collateral relief to preserve his rights. In doing so, he would have waived any defense of double jeopardy should he have received relief and been reprosecuted for the uttering offense. But, Petitioner appears to argue, if the trial court *offers* him immediate protection of his constitutional rights after he enters a questionable plea, then he is free from any further corrective criminal sanction. Such a conclusion is not required by justice, fairness, or the United States Constitution, and the waiver concept mentioned above was not intended to

2. Although the Second Circuit in United States ex rel. Hetenyi v. Wilkins, *supra,* has indicated that at least part of the Fifth Amendment prohibition against double jeopardy may be incorporated into the Fourteenth Amendment, the criterion applied in reaching the decision is that of due process of law: fundamental fairness. This is the same standard as applied in Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149 (1937). The doctrine of selective incorporation discussed in *Hetenyi* as the basis for incorporating at least part of the Fifth Amendment into the Fourteenth Amendment is based upon a concept of fundamental fairness. It would appear that the philosophical application of the selective incorporation doctrine would bring about the same practical results as the standard articulated in *Palko.*

3. On the afternoon of May 2, 1966, the trial court gave the following reasons for refusing to accept Petitioner's earlier entered plea:

"THE COURT: Mr. Carr, I have been informed by the Prosecuting At-

torney that prior to your plea of guilty, that he told you that he would not file an information against you to give you additional punishment for any prior conviction and this was done before your plea of guilty. This is irregular and possibly unconstitutional because I don't know whether you were influenced or not. It might look as though you were influenced by it, so to be on the safe side, this Court is going to revoke the sentence imposed upon you—this sentence has not been reduced to Court order, no Court order has been entered, nothing spread upon the record; he is going to revoke the sentence and reject the plea of guilty. See page 7 of the transcript, filed as part of Respondent's Exhibit No. 1.

4. Compare with Palko v. Connecticut, *supra,* in which the Supreme Court of the United States found a state statute permitting the state to appeal errors in a criminal case was not violative of fundamental principles of liberty and justice.

create such an anomaly in the law. Petitioner was not confronted with a new charge arising from the original offense and he was not faced with subsequent prosecution. Instead, he was offered a chance to reconsider his plea and, given all proper warnings and advice, to repeat the steps leading to conviction on the same offense or to seek a jury trial.[5]

Petitioner's contention that his second plea of guilty was involuntary is not supported by the preponderance of evidence presented at his plenary hearing. Vanater v. Boles, 377 F.2d 898 (4th Cir. 1967). Petitioner testified that, in spite of the proceedings whereby the first plea entered on May 2, 1966, was refused and the court explained that no promises could be made, he never believed the threat of habitual criminal prosecution was removed. This could well be true. Petitioner had two prior felony convictions. Under West Virginia Code §§ 61–11–18, 61–11–19 (Michie 1966), dealing with the penalty to be imposed upon conviction when the defendant is proved to be a former offender, Petitioner would receive a life sentence should the prosecuting attorney file an information setting forth his prior convictions. Any "threat" here is imposed by statute, and, in making an informed plea, Petitioner should and did properly consider his position as a recidivist.

The proper inquiry here regarding the voluntariness of Petitioner's plea, however, is whether Petitioner was *promised* he would *not* be treated as a recidivist should he plead guilty. Such a promise, if it induced him to enter a plea he otherwise would not have entered, would render the plea involuntary. Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510 (1961); McClure v.

Boles, 233 F.Supp. 928 (N.D.W.Va. 1964).

The facts in this case show that, when Petitioner entered the guilty plea upon which he was convicted, any promise not to seek habitual criminal prosecution was no longer in effect. The trial court had brought Petitioner back to enter a new plea precisely because of the chance that the first plea was tainted by such a promise. The trial court explained that no such promise could be binding. The promise was not renewed to Petitioner, and Petitioner had no reasonable basis to believe the promise remained in effect. United States ex rel. Thurmond v. Mancusi, 275 F.Supp. 508 (E.D.N.Y.1967). The fact that Petitioner was properly aware that recidivist proceedings could be brought against him and the fact that he considered the risks of entering a plea rather than going to trial does not mean his ability to make a voluntary decision was overcome. Cortez v. United States, 337 F.2d 699 (9th Cir. 1964), cert. denied 381 U.S. 953, 85 S.Ct. 1811, 14 L.Ed.2d 726 (1965).

Petitioner contends that he was ineffectively represented by his court-appointed attorney because the indictment against him was defective and because counsel pressured him into entering a guilty plea. His attorney testified that he advised Petitioner to enter a guilty plea because Petitioner said he was guilty of uttering a forged check. Counsel had conferred with the prosecuting attorney and had learned of the evidence against Petitioner, including handwriting evidence and a witness to the uttering who had identified Petitioner. The prosecuting attorney also advised counsel of Petitioner's prior con-

---

5. See Thompson v. United States, 155 U.S. 271, 274, 15 S.Ct. 73, 74, 39 L.Ed. 146 (1894). The Supreme Court of the United States discussed the right of the trial courts to discharge the jury and order trial by another jury "whenever in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated * * *."

See also Keerl v. State of Montana, 213 U.S. 135, 29 S.Ct. 469, 53 L.Ed. 734 (1909). Cf. Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961), rehearing denied 368 U.S. 870, 82 S.Ct. 25, 7 L.Ed.2d 70 (1961).

victions. State court counsel further testified that it had been Petitioner's decision regarding the plea to the trial court.

Nothing presented at Petitioner's evidentiary hearing indicates that Petitioner's trial counsel acted in a way that was shocking to the conscience of the court or produced a mockery of justice. Root v. Cunningham, 344 F.2d 1 (4th Cir. 1965). Nothing presented indicates that Petitioner was denied constitutional or substantial rights due to a lack of diligence on the part of counsel. State ex rel. Burkhamer v. Adams, 143 W.Va. 557, 103 S.E.2d 777 (1958), cert. denied 358 U.S. 869, 79 S.Ct. 102, 3 L.Ed.2d 101 (1958). Counsel discussed the indictment with Petitioner, learned of the evidence against Petitioner, and after advice allowed Petitioner to make his own decision, productive of the conviction now complained of.

For the reasons set forth above, Petitioner's claimed deprivations do not reach constitutional proportions. An order will be entered denying relief and dismissing the petition.