# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2011AP1030-CR |
| COMPLETE TITLE: | |

State of Wisconsin,
            Plaintiff-Respondent,
      v.
Gerald D. Taylor,
            Defendant-Appellant.

ON CERTIFICATION FROM THE COURT OF APPEALS

| | |
|---|---|
| OPINION FILED: | April 23, 2013 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 6, 2012 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Outagamie |
| JUDGE: | Dee R. Dyer |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | Prosser, J., concurs. (Opinion filed.) |
| DISSENTED: | Abrahamson, C.J., Bradley, J., dissent. (Opinion filed.) |
| NOT PARTICIPATING: | |

ATTORNEYS:

      For the defendant-appellant-petitioner, there were briefs and oral argument by *Andrew R. Hinkel*, assistant state public defender.

      For the plaintiff-respondent, the cause was argued by *Thomas J. Balistreri*, assistant attorney general, with whom on the brief was *J.B. Van Hollen*, attorney general.

**2013 WI 34**

No. 2011AP1030-CR
(L.C. No. 2009CF330)

STATE OF WISCONSIN  :  IN SUPREME COURT

State of Wisconsin,

  Plaintiff-Respondent,

  v.

Gerald D. Taylor,

  Defendant-Appellant.

NOTICE

This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.

**FILED**

**APR 23, 2013**

Diane M. Fremgen
Clerk of Supreme Court

APPEAL from a judgment and an order of the Circuit Court for Outagamie County, Dee R. Dyer, Judge. *Affirmed.*

¶1 ANNETTE KINGSLAND ZIEGLER, J. This appeal is before the court on certification by the court of appeals, pursuant to Wis. Stat. § 809.61 (2009-10).[1] The defendant, Gerald Taylor (Taylor), pled no contest to charges of uttering a forgery as a repeater. The penalty Taylor faced for uttering a forgery was "a fine not to exceed $10,000 or imprisonment not to exceed 6 years, or both." Wis. Stat. § 939.50(3)(h). Additionally, because Taylor was a repeat offender, his maximum term of

---

[1] All subsequent references to the Wisconsin Statutes are to the 2009-10 version unless otherwise indicated.

imprisonment could "be increased by not more than 2 years if the prior convictions were for misdemeanors."[2]  Wis. Stat. § 939.62(1)(b).  Therefore, Taylor faced a maximum term of imprisonment of eight years.

¶2  Specifically, at the plea hearing, the circuit court informed Taylor that it "could impose the maximum penalty here of a $10,000 fine or six years in prison or both."  Though the court mentioned the repeater allegation several times, it did not explicitly inform Taylor during the plea colloquy that he faced an additional two-year penalty because of the repeater allegation for a maximum term of imprisonment of eight years.

¶3  Thereafter, the circuit court sentenced Taylor to a six-year term of imprisonment for uttering a forgery as a repeater.  Subsequently, Taylor filed a motion for postconviction relief pursuant to Wis. Stat. § 809.30(2)(h).  Taylor moved to withdraw his no contest plea, arguing that it was not entered knowingly, intelligently, and voluntarily.

¶4  The circuit court denied Taylor's motion without requiring the State to prove, at a <u>Bangert</u> hearing, that Taylor entered his plea knowingly, intelligently, and voluntarily.[3]  The

---

[2] The complaint charges Taylor as a repeater, as he had been convicted of at least three prior misdemeanors.

[3] <u>State v. Bangert</u>, 131 Wis. 2d 246, 389 N.W.2d 12 (1986) outlines the procedure for withdrawal of a plea based on an error in the plea colloquy:

> Where the defendant has shown a <u>prima facie</u> violation of sec. 971.08(1)(a) or other mandatory duties, and alleges that he in fact did not know or understand the information which should have been provided at the

court stated that since Taylor was informed that he faced a six-year term of imprisonment and he received a six-year term of imprisonment, any error was "harmless."

¶5 Taylor appealed the circuit court's denial of his motion to withdraw his no contest plea. Taylor argued that it was improper for the circuit court to find that its error was "harmless," and that a plea that is not entered knowingly, intelligently, and voluntarily is harmful under State v. Bangert, 131 Wis. 2d 246, 389 N.W.2d 12 (1986).

¶6 The court of appeals certified Taylor's appeal to this court. It noted that "it is unclear whether understating the potential penalty during a plea colloquy can properly be deemed harmless error, and if so, where in the analytical framework of Bangert such a determination should be made."

¶7 We granted the court of appeals' certification and now affirm the judgment of the circuit court.

¶8 We hold that the defendant's plea was entered knowingly, intelligently, and voluntarily when the record makes clear that the defendant knew the maximum penalty that could be imposed and was verbally informed at the plea hearing of the penalty that he received. Therefore, the circuit court did not

---

plea hearing, the burden will then shift to the state to show by clear and convincing evidence that the defendant's plea was knowingly, voluntarily, and intelligently entered, despite the inadequacy of the record at the time of the plea's acceptance.

Id. at 274.

err by denying Taylor's postconviction motion to withdraw his no contest plea.

¶9 Further, plea withdrawal "remains in the discretion of the circuit court and will not be disturbed unless the defendant shows that it is necessary to correct a manifest injustice." State v. Cross, 2010 WI 70, ¶4, 326 Wis. 2d 492, 786 N.W.2d 64; State v. Cain, 2012 WI 68, ¶20, 342 Wis. 2d 1, 816 N.W.2d 177. Taylor has not demonstrated that withdrawal of his plea is necessary to correct a manifest injustice. Accordingly, the judgment and order of the circuit court is affirmed.

## I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶10 On January 2, 2009, at an M&I Bank in Appleton, Wisconsin, Taylor attempted to cash check number 4627, which was drawn on the account of Finished Touch Inc. and was made payable to Gerald Dwayne Taylor. The teller at the bank had previously been alerted that someone named Gerald Taylor had passed counterfeit checks at an M&I Bank in Green Bay, Wisconsin. The teller delayed Taylor, giving Sgt. Michael Daul of the Appleton Police Department time to arrive. Taylor acknowledged that he had been the one attempting to cash the check and claimed that he had done subcontracting work for Finished Touch Inc. Officer Daul contacted James Smith of Finished Touch Inc. Smith indicated that he was the person in charge of writing all the checks for Finished Touch Inc., that he did not recall writing a check to Taylor, that he did not have any employees or subcontractors named Taylor, and that he still had check number 4627 in his book.

¶11 On May 8, 2009, the State filed a criminal complaint charging Taylor with uttering a forgery as a repeater, in violation of Wis. Stat. §§ 943.38(2),[4] 939.50(3)(h),[5] and 939.62(1)(b).[6] The complaint stated that upon conviction, Taylor "may be fined not more than Ten Thousand Dollars ($10,000), or imprisoned not more than six (6) years, or both." The complaint also alleged that "because the defendant is a repeater, having been convicted of at least three misdemeanors, which conviction(s) remain of record and unreversed, the maximum term of imprisonment . . . may be increased by not more than 2 years." The complaint listed Taylor's prior convictions, including two disorderly conducts, resisting or obstructing an officer, and criminal damage to property. At Taylor's bail hearing on August 20, 2009, the court asked Taylor's attorney, Michael Dally, if he wanted the complaint read. Attorney Dally

---

[4] Wisconsin Stat. § 943.38(2), "Forgery," provides, in relevant part:

> Whoever utters as genuine or possesses with intent to utter as false or as genuine any forged writing or object mentioned in sub. (1), knowing it to have been thus falsely made or altered, is guilty of a Class H felony.

[5] Wisconsin Stat. § 939.50(3)(h), "Classification of felonies," provides that the penalty for a Class H felony is "a fine not to exceed $10,000 or imprisonment not to exceed 6 years, or both."

[6] Wisconsin Stat. § 939.62(1)(b), "Increased penalty for habitual criminality," provides that "[a] maximum term of imprisonment of more than one year but not more than 10 years may be increased by not more than 2 years if the prior convictions were for misdemeanors."

5

responded that the "Court does not have to read the complaint. It does charge uttering a forged instrument as a repeat offender. Priors appear to be for misdemeanors." Taylor appeared in person at the bail hearing.

¶12 Taylor waived his right to a preliminary hearing on November 24, 2009. At the waiver hearing, the court asked Taylor: "Were you able to read over the criminal complaint in this case to see what they say you did?" Taylor responded "Yeah." The court confirmed "So you could understand that?" Taylor responded "Yeah."

¶13 On December 1, 2009, the State filed an information which stated that upon conviction for uttering a forgery, Taylor may be "imprisoned not more than six (6) years." Further, because Taylor is a repeat offender, the term of imprisonment "may be increased by not more than 2 years if the prior convictions were for misdemeanors."

¶14 At Taylor's arraignment on January 25, 2010, the court asked Taylor's attorney, "Mr. Dally, have you received a copy of the information?" Taylor's attorney responded, "We have Judge. It's a charge of uttering with the repeater enhanced and alleged as well."

¶15 Pursuant to plea negotiations, Taylor agreed to plead no contest to the charge of uttering a forgery as a repeater, and in return, the State would recommend, inter alia, three years of probation. On August 23, 2010, Taylor completed a Plea Questionnaire/Waiver of Rights form. In the "understandings" section, Taylor acknowledged that he understood the judge was

6

"not bound by any plea agreement or recommendations and may impose the maximum penalty." Taylor's maximum penalty was handwritten on the form: "8 yrs prison/$10,000 fine or both." Taylor signed the form, acknowledging that he "reviewed and understand[s] this entire document and any attachments. I have reviewed it with my attorney (if represented). I have answered all questions truthfully and either I or my attorney have checked the boxes. I am asking the court to accept my plea and find me guilty." Taylor's attorney also signed the form and acknowledged that he had "discussed this document and any attachments with the defendant. I believe the defendant understands it and the plea agreement. The defendant is making this plea freely, voluntarily, and intelligently."

¶16   At the plea hearing held on August 23, 2010, the same day Taylor filled out the plea questionnaire form, the court mentioned the repeater several times and confirmed that Taylor had read and understood the complaint and plea questionnaire form:

> THE COURT:      Then how does your client wish to plead to this one count of felony uttering a forgery?
>
> ATTORNEY DALLY: No contest, Judge.
>
> THE COURT:      And that is with the repeater still, is it?
>
> ATTORNEY DALLY: It is. There were several prior misdemeanor convictions.
>
>    . . . .

THE COURT: How do you wish to plead to this forgery, a felony as a repeater?

THE DEFENDANT: Plead no contest, Your Honor.

THE COURT: You did go over a plea questionnaire form with Mr. Dally, did you?

THE DEFENDANT: Yes, I did.

THE COURT: When you did that, did you understand all the information in these documents?

THE DEFENDANT: Yes.

.  .  .  .

THE COURT: Were you able to read over the criminal complaint in this case and understand what it says?

THE DEFENDANT: Yes.

THE COURT: And how about the plea questionnaire, when you went over that, were you able to understand all that?

THE DEFENDANT: Yes.

.  .  .  .

THE COURT: And when you went over the plea questionnaire form with him, did you believe he understood that information?

ATTORNEY DALLY: He seemed to.  I believe he did.

THE COURT: Therefore, do you believe that he's freely, voluntarily, and understandingly entering his plea today?

ATTORNEY DALLY: Yes.

The court asked Taylor if he understood that it was not bound by any agreements or recommendations.  Taylor acknowledged that he

8

understood.   The court then stated: "I could impose the maximum penalty here of a $10,000 fine or six years in prison or both if I thought that's what was necessary.   Do you understand that?" Taylor said "Yes, I do."   At the plea hearing, however, the circuit court did not expressly inform Taylor that because of the repeater allegation, the potential maximum term of imprisonment was eight years.

¶17 On October 11, 2010, the circuit court sentenced Taylor to a term of imprisonment of six years, consisting of three years of initial confinement and three years of extended supervision.

¶18 Approximately four months later, on February 8, 2011, Taylor filed a motion for postconviction relief, seeking to withdraw his no contest plea.   Taylor alleged that the plea colloquy was deficient because it did not inform him of the maximum penalty under Wis. Stat. § 971.08 and Bangert.   In the motion, Taylor also affirmatively alleged that he did not know the correct maximum penalty.

¶19 The State moved the court to deny Taylor's motion, arguing that the "defendant has failed to make a prima facie showing that anything other than a harmless error occurred." The State argued that under Brown, even if Taylor did not understand that the maximum penalty was greater than six years, it would be "harmless" because Taylor's sentence did not exceed the maximum discussed during the plea colloquy.   State v. Brown, 2006 WI 100, ¶78, 293 Wis. 2d 594, 716 N.W.2d 906.

¶20 The circuit court denied Taylor's motion without requiring the State to prove that Taylor entered his plea knowingly, intelligently, and voluntarily. The circuit court believed that this case was similar to Brown. It noted that in Brown, the defendant was not informed that his sentences for separate crimes could be served consecutively, but it was a harmless error because the sentence he received did not exceed the sentence he was told he could receive. The circuit court here believed its error was "harmless," similar to Brown, because the court informed Taylor he could be sentenced to six years and Taylor was sentenced to six years.

¶21 Taylor appealed the circuit court's denial of his motion to withdraw his no contest plea. Taylor argued that it was improper for the circuit court to find that its error was "harmless," and argued that a plea that is not entered knowingly, intelligently, and voluntarily is harmful under Bangert. Taylor argued that because the circuit court did not inform him of the correct maximum penalty during the plea colloquy and because he alleged that he did not know the true maximum penalty, he should have been entitled to a Bangert hearing at which the State must prove, by clear and convincing evidence, that his plea was entered knowingly, intelligently, and voluntarily.[7]

¶22 The court of appeals certified Taylor's appeal to this court. It noted that "it is unclear whether understating the

---

[7] See supra note 3.

potential penalty during a plea colloquy can properly be deemed harmless error, and if so, where in the analytical framework of Bangert such a determination should be made." The court of appeals noted that following either Brown or Cross in the instant case could arguably lead to different results:

> As in Brown, the defendant here was told that he faced a lesser punishment than the law actually provided, but the sentence actually imposed did not exceed the amount of time the court had erroneously informed the defendant he faced. The court's emphasis in Brown on the fact that the defendant was not sentenced to more time than he was told he faced suggests that the harmless error doctrine might be applicable in these circumstances——regardless of whether the defendant was or was not aware of the actual penalty. That would negate the necessity for a hearing. In contrast, the court's discussion in Cross seems to suggest that the due process concerns implicated whenever a defendant has erroneously been informed that the penalty is less than the actual maximum might, in fact, require a hearing to determine whether the defendant was aware of the actual penalty he faced.

¶23 We granted the court of appeals' certification by an order dated March 15, 2012.

## II. STANDARD OF REVIEW

¶24 "When a defendant seeks to withdraw a guilty plea after sentencing, he must prove, by clear and convincing evidence, that a refusal to allow withdrawal of the plea would result in 'manifest injustice.'" Brown, 293 Wis. 2d 594, ¶18 (citing State v. Thomas, 2000 WI 13, ¶16, 232 Wis. 2d 714, 605 N.W.2d 836). One way the defendant can show manifest injustice is to prove that his plea was not entered knowingly,

11

intelligently, and voluntarily. Id. (citing State v. Trochinski, 2002 WI 56, ¶15, 253 Wis. 2d 38, 644 N.W.2d 891).

¶25 A plea not entered knowingly, intelligently, and voluntarily violates fundamental due process, and a defendant therefore may withdraw the plea as a matter of right. Cross, 326 Wis. 2d 492, ¶14 (citing Brown, 293 Wis. 2d 594, ¶19). Whether a plea was entered knowingly, intelligently, and voluntarily is a question of constitutional fact that is reviewed independently. Id. "In making this determination, this court accepts the circuit court's findings of historical or evidentiary facts unless they are clearly erroneous." Id.

¶26 Whether Taylor has pointed to a plea colloquy deficiency that establishes a violation of Wis. Stat. § 971.08 or other mandatory duty at a plea hearing is a question of law we review de novo. Brown, 293 Wis. 2d 594, ¶21.

### III. ANALYSIS

¶27 When a defendant moves to withdraw his or her plea based on an error in the plea colloquy, the proper analysis is first to determine if the defendant should be allowed to withdraw the plea because the circuit court violated its duty under Wis. Stat. § 971.08 or other court-mandated duty, and second to determine, if necessary, whether the failure to withdraw the plea would otherwise result in a manifest injustice.

¶28 In this case, Taylor was told at the plea colloquy that he faced a maximum term of imprisonment of six years when in fact he faced a maximum of eight years because of the

12

repeater allegation. However, the record is replete with evidence that Taylor was nonetheless aware of the potential eight-year term of imprisonment. Moreover, at the plea hearing, the circuit court verbally informed Taylor of the six-year term of imprisonment to which he was ultimately sentenced. As a result, Taylor's plea was entered knowingly, intelligently, and voluntarily, and it was not a violation of Taylor's due process rights to deny his motion to withdraw his no contest plea. Further, Taylor has not otherwise established that failure to withdraw his no contest plea would result in a manifest injustice.

### A. Knowing, Intelligent, and Voluntary

¶29 Recent Wisconsin Supreme Court precedent requires us to affirm the order of the circuit court that denied Taylor's motion for plea withdrawal. Under the analysis set forth in Cross and Brown, we conclude that Taylor's plea was entered knowingly, intelligently, and voluntarily.

¶30 "The duties established in Wis. Stat. § 971.08, in Bangert, and in subsequent cases are designed to ensure that a defendant's plea is knowing, intelligent, and voluntary." Brown, 293 Wis. 2d 594, ¶23. Due process requires that "a defendant's guilty plea must be affirmatively shown" to be knowing, intelligent, and voluntary. Cross, 326 Wis. 2d 492, ¶16; Brown, 293 Wis. 2d 594, ¶25. Before the court accepts a plea of guilty or no contest, it must "[a]ddress the defendant personally and determine that the plea is made voluntarily with

13

understanding of the nature of the charge and the potential punishment if convicted." Wis. Stat. § 971.08(1)(a).

¶31 In order to ensure that a plea is knowing, intelligent, and voluntary, the court is required, at the plea hearing and on the record, to do the following:

(1) Determine the extent of the defendant's education and general comprehension so as to assess the defendant's capacity to understand the issues at the hearing;

(2) Ascertain whether any promises, agreements, or threats were made in connection with the defendant's anticipated plea, his appearance at the hearing, or any decision to forgo an attorney;

(3) Alert the defendant to the possibility that an attorney may discover defenses or mitigating circumstances that would not be apparent to a layman such as the defendant;

(4) Ensure the defendant understands that if he is indigent and cannot afford an attorney, an attorney will be provided at no expense to him;

(5) Establish the defendant's understanding of the nature of the crime with which he is charged and the range of punishments to which he is subjecting himself by entering a plea;

(6) Ascertain personally whether a factual basis exists to support the plea;

(7) Inform the defendant of the constitutional rights he waives by entering a plea and verify that the defendant understands he is giving up these rights;

(8) Establish personally that the defendant understands that the court is not bound by the terms of any plea agreement, including recommendations from the district attorney, in every case where there has been a plea agreement;

14

(9) Notify the defendant of the direct consequences of his plea; and

(10) Advise the defendant that 'If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense [or offenses] with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law,' as provided in Wis. Stat. § 971.08(1)(c).

Brown, 293 Wis. 2d 594, ¶35 (footnotes omitted).

¶32 If the court fails to fulfill one of the duties mandated in Wis. Stat. § 971.08 or under the Bangert line of cases (a "Bangert violation"), the defendant may move to withdraw his plea. Bangert, 131 Wis. 2d at 274. In the motion ("Bangert motion"), the defendant must (1) make a prima facie showing of a violation of Wis. Stat. § 971.08 or other court-mandated duty, and (2) allege that the defendant did not, in fact, know or understand the information that should have been provided during the plea colloquy. Id. "A defendant attempting to make this prima facie showing must point to deficiencies in the plea hearing transcript; conclusory allegations are not sufficient." Cross, 326 Wis. 2d 492, ¶19. Assuming the defendant makes a proper Bangert motion, the defendant is entitled to an evidentiary hearing ("Bangert hearing"), where the State has the burden to prove by clear and convincing evidence that the defendant's plea, despite the inadequacy of the plea colloquy, was knowing, intelligent, and voluntary. Bangert, 131 Wis. 2d at 274. One reason to shift the burden of persuasion to the State is to encourage the State "to assist the

15

trial court in meeting its sec. 971.08" and other mandated duties. Id. at 275. The State may use "any evidence" to prove that the defendant's plea was knowing, intelligent, and voluntary, including any documents in the record and testimony of the defendant or defendant's counsel. Id. at 274-75.

¶33 In this case, we are concerned with the court's duty to "[e]stablish the defendant's understanding of . . . the range of punishments to which he is subjecting himself by entering a plea." Brown, 293 Wis. 2d 594, ¶35 (citing Bangert, 131 Wis. 2d at 262). A recent decision of this court provides extensive authority on this issue:

> [W]here the sentence communicated to the defendant is higher, but not substantially higher, than that authorized by law, the incorrectly communicated sentence does not constitute a Bangert violation and will not, as a matter of law, be sufficient to show that the defendant was deprived of his constitutional right to due process of law.

Cross, 326 Wis. 2d 492, ¶40. In that case, the circuit court informed Cross that his maximum term of imprisonment was 40 years, when in fact it was only 30 years, and Cross brought a motion to withdraw his plea, arguing that it was not entered knowingly, intelligently, and voluntarily. Id., ¶¶1, 11. Though the circuit court granted his motion for resentencing, it denied Cross's motion for plea withdrawal. Id., ¶2. This court concluded that the circuit court was correct to deny Cross's plea withdrawal motion. Id., ¶4. According to Cross, "a defendant who has been told a maximum punishment higher, but not substantially higher, than that authorized by law, has not

16

necessarily made a prima facie case that the requirements of § 971.08 and our case law have been violated." Id., ¶30. Cross looked to the underlying purpose of the Bangert framework, to ensure that the defendant's plea is entered knowingly, intelligently, and voluntarily:

> [R]equiring an evidentiary hearing for every small deviation from the circuit court's duties during a plea colloquy is simply not necessary for the protection of a defendant's constitutional rights. The Bangert requirements exist as a framework to ensure that a defendant knowingly, voluntarily, and intelligently enters his plea. We do not embrace a formalistic application of the Bangert requirements that would result in the abjuring of a defendant's representations in open court for insubstantial defects.

Id., ¶32. Additionally, Cross noted that "the great weight of authorities from other state and federal courts reject the notion that the failure to understand the precise maximum punishment is a per se due process violation."[8] Id., ¶33. Thus,

---

[8] See also State v. Cross, 2010 WI 70, ¶33 n.7, 326 Wis. 2d 492, 786 N.W.2d 64; Williams v. Smith, 591 F.2d 169, 172 (2d Cir. 1979)("[T]he test in this circuit for determining the constitutional validity of a state court guilty plea where the defendant has been given sentencing misinformation is whether the defendant was aware of actual sentencing possibilities . . . ."). Cf. Worthen v. Meachum, 842 F.2d 1179, 1183 (10th Cir. 1988) (overruled on other grounds by Coleman v. Thomson, 501 U.S. 722 (1991); overruling recognized by Mendoza v. Hatch, 620 F.3d 1261 (2010)). In Worthen, the defendant argued that his plea was not knowing and voluntary because he was not advised on the record of acts sufficient to constitute the offense:

> [I]n order for a guilty plea to be 'voluntary in a constitutional sense,' a defendant must . . . have a competent understanding of the charge against him. The Supreme Court has clearly indicated, however, that

17

"a defendant's due process rights are not necessarily violated when he is incorrectly informed of the maximum potential imprisonment," and in some cases, "small deviations" from the Bangert line of cases do not amount to a Bangert violation. Id., ¶¶37-38. Further, Cross surmised that when a defendant is given a sentence in excess of that authorized by law, which "presumably would also involve an error in the understanding of the possible maximum penalty," the proper remedy is to commute the sentence under Wis. Stat. § 973.13,[9] not plea withdrawal. Id., ¶34.

¶34 We recognize that the Cross court noted that "when the defendant is told the sentence is lower than the amount allowed by law, a defendant's due process rights are at greater risk and a Bangert violation may be established." Id., ¶39. Under these facts, however, we conclude that Taylor's due process rights

---

a defendant of sufficient 'intelligence and experience in the criminal justice system' may, in some circumstances, be presumed to have understood the nature of the charge even though a specific explanation is not shown on the plea record.

Id. (citing Marshall v. Lonberger, 459 U.S. 422, 436-37 (1983)). Thus, in some circumstances, a guilty plea will still be knowing, intelligent, and voluntary, and the defendant's due process rights will not be violated, when the defendant is informed of the incorrect maximum sentence. See Cross, 326 Wis. 2d 492, ¶37.

[9] Wisconsin Stat. § 973.13 provides: "In any case where the court imposes a maximum penalty in excess of that authorized by law, such excess shall be void and the sentence shall be valid only to the extent of the maximum term authorized by statute and shall stand commuted without further proceedings."

18

were not violated when the circuit court denied his motion to withdraw his no contest plea. At the plea colloquy, the court verbally informed Taylor that he faced a potential six-year term of imprisonment for the underlying offense and that he also was pleading to being a repeat offender. Ultimately, he was sentenced to a six-year term of imprisonment. Thus, on this record, a failure to discuss the additional two-year repeater penalty enhancer at the plea hearing is an insubstantial defect.

¶35 The record in this case is replete with evidence that Taylor was aware of the potential eight-year term of imprisonment, comprised of a six-year term of imprisonment for the underlying charge and an additional two-year term of imprisonment from the alleged repeater. For example, the complaint, filed on May 8, 2009, stated that Taylor faced a term of imprisonment of "not more than six (6) years," which "may be increased by not more than 2 years if the prior convictions were for misdemeanors." The complaint listed Taylor's prior convictions, including two disorderly conducts, resisting or obstructing an officer, and criminal damage to property.

¶36 At Taylor's bail hearing on August 20, 2009, the court asked Taylor's attorney if he wanted the complaint read. Attorney Dally responded that the "Court does not have to read the complaint. It does charge uttering a forged instrument as a repeat offender. Priors appear to be for misdemeanors." Taylor appeared personally at the bail hearing. At the preliminary hearing, on November 24, 2009, the court asked Taylor if he had

read the complaint, and Taylor responded that he had read the complaint.

¶37 Further, the information, filed on December 1, 2009, stated that upon conviction, Taylor could be sentenced to "not more than six (6) years" and that the maximum term "may be increased by not more than 2 years if the prior convictions were for misdemeanors." At the arraignment on January 25, 2010, the court asked Taylor's attorney if he had received a copy of the information. The attorney responded "We have, Judge. It's a charge of uttering with the repeater enhanced and alleged as well."

¶38 Additionally, Taylor completed a Plea Questionnaire/Waiver of Rights form on August 23, 2010. Handwritten on the form is Taylor's acknowledgement that the judge is not bound by any agreement or recommendation, and that the judge may impose the maximum penalty: "8 yrs prison/$10,000 fine or both." Taylor signed the form, acknowledging that he had read and understood the form. Taylor's attorney also signed the form, acknowledging that he had discussed the document with Taylor, and that he believed Taylor understood the form. At the plea hearing, held on the same day that Taylor completed the plea questionnaire form, the court asked Taylor if he had read the complaint and understood it, and Taylor answered "Yes." The court also asked Taylor if he had gone over the plea questionnaire form with his attorney and if he understood all of the information. Taylor answered "Yes" to both questions. Later in the hearing, the court once again asked Taylor if he

had gone over the plea questionnaire form and if he understood it. Taylor answered "Yes." The court then asked Taylor's attorney if he had gone over the plea questionnaire form with Taylor and if the attorney believed Taylor understood the form. The attorney answered that he had gone over the form with Taylor, and he believed that Taylor understood the form. The attorney acknowledged on the plea questionnaire form that he believed Taylor was entering his plea "freely, voluntarily, and intelligently."

¶39 To conclude that Taylor was <u>not</u> aware of the maximum eight-year term of imprisonment, we would have to assume that Taylor's trial counsel misrepresented, on the plea questionnaire form itself and to the court, that he had read the form with Taylor and that Taylor understood it. We would also have to assume that Taylor misrepresented to the court that he had received, read, and understood the complaint and plea questionnaire form. "[I]f a defendant does understand the charge and the effects of his plea, he should not be permitted to game the system by taking advantage of judicial mistakes." <u>Brown</u>, 293 Wis. 2d 594, ¶37. "We do not embrace a formalistic application of the <u>Bangert</u> requirements that would result in the abjuring of a defendant's representations in open court for insubstantial defects." <u>Cross</u>, 326 Wis. 2d 492, ¶32. The failure to specifically reference the two-year repeater penalty enhancer at the plea hearing is, on review of this record, an "insubstantial defect" such that an evidentiary hearing is not required to determine if Taylor entered his plea knowingly,

intelligently, and voluntarily. A <u>Bangert</u> violation occurs, and a hearing is required, when the plea is not entered knowingly, intelligently, and voluntarily. No such hearing is required here because this record reflects that Taylor indeed pled knowingly, intelligently, and voluntarily. He knew of the eight-year maximum term of imprisonment, and in any event, he was verbally informed by the court at the plea hearing of the sentence that he actually received.

¶40 The certification from the court of appeals points out that it is unclear, after <u>Cross</u> and <u>Brown</u>, whether understanding the potential penalty during the plea colloquy can properly be deemed harmless error, and if so, where in the analytical framework of <u>Bangert</u> such a determination should be made. Taylor and the State agree, but for different reasons, that the harmless error doctrine should not apply to this case. We also agree that here the harmless error does not apply.[10] Taylor argues that this error was not "harmless" because "the unknowing plea is itself the harm caused by the court's error." The State argues that no case has ever applied the harmless error doctrine

---

[10] Taylor argues that in addition to <u>Cross</u>, 326 Wis. 2d 492, another Wisconsin case lends support to the proposition that erroneous information about the possible sentence is not "harmless" simply because the defendant received a sentence within the erroneous range given. <u>See</u> <u>State v. Mohr</u>, 201 Wis. 2d 693, 549 N.W.2d 497 (Ct. App. 1996). We need not address Taylor's argument, since we determine that neither <u>Cross</u> nor <u>State v. Brown</u>, 2006 WI 100, 293 Wis. 2d 594, 716 N.W.2d 906, adopted the harmless error analysis when analyzing a defendant's motion to withdraw a guilty or no contest plea based on an alleged violation of Wis. Stat. § 971.08 or other court-mandated duty during the plea colloquy.

22

to the Bangert framework, and that the proper focus is whether failure to withdraw Taylor's plea would result in a manifest injustice.  In this case, the circuit court determined that, under Brown, since Taylor was informed of and actually received a six-year term of imprisonment, any error was "harmless."

¶41  Brown, however, was not a harmless error case.  The court did not undertake the harmless error analysis.  Instead, in Brown, the court considered whether the defendant entered his plea knowingly, intelligently, and voluntarily.  Brown alleged that the circuit court failed to enumerate the elements of the charges to which he pled guilty, failed to inform him of the constitutional rights he waived by pleading guilty, and failed to adequately explain the potential punishment he faced.  Brown, 293 Wis. 2d 594, ¶3.  The court concluded that Brown was entitled to a Bangert hearing based on the circuit court's failure to inform him of the elements of the crime and the circuit court's failure to inform him that when he pled, he was waiving certain constitutional rights.  Id., ¶¶66, 77.  While Brown did make two short references to harmlessness, it clearly did not engage in a harmless error analysis.[11]  For example,

---

[11] See State v. Martin, 2012 WI 96, ¶¶45-46, 343 Wis. 2d 278, 816 N.W.2d 270.

Nor did Cross undertake the harmless error analysis.  The only time Cross mentioned harmless error was in the context of discussing federal rules that support the proposition that not every plea colloquy error should result in withdrawal: "Rule 11(h) states that any 'variance from the requirements of this rule is harmless error if it does not affect substantial rights.'"  Cross, 326 Wis. 2d 492, ¶36 (citing Fed. R. Crim. P. 11(h)).

23

Brown noted that if a defendant's Bangert motion does not properly allege that the defendant lacked understanding with regard to the plea, "any shortcoming in the plea colloquy is harmless." Id., ¶63. Brown instructs that before the defendant is entitled to a hearing on a motion to withdraw a guilty or no contest plea, the defendant's Bangert motion must satisfy two requirements: (1) it must make a prima facie showing of a violation of Wis. Stat. § 971.08(1) or other court-mandated duty, and (2) it must allege that the defendant did not know or understand the information that should have been provided at the plea hearing. Id., ¶39. Brown also used the phrase "harmless" when it concluded that even if the court had erred by not telling Brown that his sentences could run consecutively, it would be "harmless" because Brown's total sentence was not greater than the sentence he was informed he could receive. Id., ¶78. Much like the case we have before us today, the Brown

_____

In a court of appeals case, State v. Johnson, the court focused mainly on whether failure to allow the defendant to withdraw his plea would result in manifest injustice where the circuit court failed to inform the defendant that it was not bound by the plea agreement. 2012 WI App 21, 339 Wis. 2d 421, 811 N.W.2d 441. The court also noted that under Cross, this was a harmless error. Id., ¶¶14-15. We note that the "harmless error" doctrine is a distinct legal analysis. See Martin, 343 Wis. 2d 278, ¶¶45-46. We repeat, however, that neither Brown nor Cross undertook the harmless error analysis; nor does this court today undertake the harmless error analysis to determine whether the defendant may withdraw his plea after alleging a violation of the court's Wis. Stat. § 971.08 or other mandated duties. Rather, the focus is on whether the defendant's plea was entered knowingly, intelligently, and voluntarily, and whether the defendant is otherwise able to prove that failure to withdraw the plea would result in a manifest injustice.

24

court determined that this "error" did not prevent Brown's plea from being knowing, intelligent, and voluntary because it is a "reasonable conclusion when a defendant is confronted with multiple charges [] that the defendant could face multiple punishments." Id.

¶42 As in Brown, it is a "reasonable conclusion" that Taylor understood that he faced an enhanced penalty since he was charged with a repeater penalty enhancer. The court informed Taylor of the repeater allegation several times at the plea colloquy, and the record provides clear evidence that Taylor was aware of the additional two-year term of imprisonment he faced because of the repeater allegation. Also, Taylor's actual sentence, like Brown's, did not exceed the six-year term of imprisonment that the court, at the plea hearing, specifically informed him that he could receive. Thus, under the precedent of Cross and Brown, we conclude that the circuit court's failure at the plea hearing to inform Taylor of the additional two-year term of imprisonment does not render Taylor's plea not knowing, intelligent, and voluntary, and the circuit court did not err by

denying Taylor's plea withdrawal motion without holding a
Bangert hearing.[12]

## B. Manifest Injustice

¶43 Taylor's request for plea withdrawal is properly
analyzed under the manifest injustice framework.  Taylor has not
proven that withdrawal is necessary to correct a manifest
injustice.

### 1. Following the Precedent of Cain, Taylor's Motion is Properly Analyzed under the Manifest Injustice Framework

---

[12] In this opinion, we afford due respect to longstanding
precedent which requires that before the court accepts a guilty
or no contest plea, it must "determine that the plea is made
voluntarily with understanding of the nature of the charge and
the potential punishment if convicted."  Wis. Stat.
§ 971.08(1)(a); Brown, 293 Wis. 2d 594, ¶35 (requiring the court
at the plea colloquy to "[e]stablish the defendant's
understanding of the nature of the crime with which he is
charged and the range of punishments to which he is subjecting
himself by entering a plea.").  The dissent incorrectly implies
that the defendant cannot knowingly, intelligently, and
voluntarily enter a plea without being specifically advised of
the potential maximum term of confinement and also the potential
maximum term of extended supervision.  Dissent, ¶116.  We have
never held, and we do not hold today, that the court must parse
out and specifically advise the defendant of the potential term
of confinement and also the potential term of extended
supervision at the plea colloquy.  In fact, to so advise a
defendant could be misleading since a defendant's initial term
of confinement may be increased during the confinement phase or
the extended supervision phase.  See Wis. Stat. § 302.113(3)(a)
("If an inmate subject to this section violates any regulation
of the prison or refuses or neglects to perform required or
assigned duties, the department may extend the term of
confinement in prison portion of the inmate's bifurcated
sentence."); § 302.113(9)(am) (stating that if person violates a
condition of extended supervision, supervision can be revoked
and the person ordered to return to confinement for a time not
exceeding remaining time on the bifurcated sentence).

¶44 Taylor is arguing that because the circuit court did not verbally inform him at the plea hearing of the potential, additional two-year term of imprisonment from the repeater allegation, his entire plea is not knowing, intelligent, and voluntary. Taylor argues that he is entitled to a Bangert hearing and that he should be able to withdraw his entire plea based on his alleged lack of knowledge of the additional two-year term of imprisonment from the repeater allegation. However, the fact that the circuit court did not verbally discuss the additional two-year term of imprisonment at the plea hearing, while not ideal, does not automatically trigger a hearing under Bangert and its progeny.

¶45 We reject Taylor's argument——that because he was not specifically, verbally advised by the circuit court at the plea hearing of the potential, additional two-year term of imprisonment from the alleged repeater, his entire plea is not knowing, intelligent, and voluntary——because he did in fact plead knowingly, intelligently, and voluntarily to the underlying crime of uttering a forgery. At the plea hearing, the court did verbally inform Taylor that he faced a maximum term of imprisonment of six years for the underlying charge of

uttering a forgery.[13]  See supra, ¶16.  Taylor does not argue that he did not knowingly, intelligently, and voluntarily plead to the underlying charge of uttering a forgery, which he knew carried a six-year term of imprisonment.  Moreover, Taylor never argued that the repeater allegation should be dismissed because of the plea hearing deficiency.[14]  Instead, Taylor argues that the entire plea should be withdrawn because he did not know of the additional two-year term of imprisonment from the repeater allegation.[15]  The record reflects that Taylor in fact received a

---

[13] As we noted in Part III.A. above, if a defendant is given a sentence greater than that authorized by law, presumably including "an error in the understanding of the possible maximum penalty," the proper remedy for that error is to commute the sentence, not plea withdrawal.  Cross, 326 Wis. 2d 492, ¶34. Thus, had Taylor actually been sentenced to the full eight years, Wis. Stat. § 973.13 would have applied to commute his sentence to six years, which would be the amount authorized by law.

[14] Clearly, the circuit court could consider his prior criminal convictions at sentencing regardless of whether the State charged Taylor as a repeater.

[15] Unlike in Bangert, where the error was a failure to advise the defendant of the potential sentence for the underlying crime, Taylor's argument relates only to the two-year repeater, not the penalty for the underlying crime.

six-year term of imprisonment. As previously discussed, Taylor knew that the charges carried a maximum eight-year term of imprisonment.

¶46 In addition, recent precedent and the record in this case do not support Taylor's argument. We are bound by the precedent of Cain, 342 Wis. 2d 1. Taylor's argument for plea withdrawal is remarkably similar to the unsuccessful argument presented by Cain. Cain pled no contest to manufacturing tetrahydrocannabinol (THC) in an amount of more than four but less than twenty marijuana plants. Id., ¶¶5-6. Cain argued that he should be allowed to withdraw his plea because he admitted to manufacturing only four plants, not more than four plants. Id., ¶27. Like Taylor, Cain faced an enhanced penalty

---

Further, under State v. Harris, the court can apply a repeater enhancement only if it seeks to sentence the defendant to a greater amount than the maximum allowed for the underlying offense. 119 Wis. 2d 612, 619, 350 N.W.2d 633 (1984). In this case, since the circuit court sentenced Taylor to only six years, the sentence enhancement from the repeater allegation never applied. Therefore, this case is distinguishable from Bangert; Taylor cannot argue that his plea to the underlying forgery was not knowing, intelligent, and voluntary because the court did not violate any mandated duty with regard to that charge. The proper remedy for failure to inform the defendant of an additional two-year penalty from the repeater allegation would be to commute that part of the sentence under Wis. Stat. § 973.13, not withdrawal of the entire plea. That remedy is not necessary here, since Taylor was given a six-year term of imprisonment.

if he pled to manufacturing <u>more</u> than four plants.[16]  The court analyzed Cain's argument under the manifest injustice framework, not under the <u>Bangert</u> framework.  <u>Id.</u>, ¶¶33-37.  Looking at the entire record of the proceedings——including documents and statements from Cain and his attorney that indicated a number of plants greater than four——the court determined that Cain had not met his burden to show that plea withdrawal was necessary to correct a manifest injustice.  <u>Id.</u>, ¶37.

¶47  In this case, the crux of Taylor's argument is that he did not know or understand the potential, additional two-year term of imprisonment from the repeater allegation at the time he entered his plea.  Under the logic of <u>Cain</u>, Taylor's claim is properly analyzed under the manifest injustice framework.

### 2. Taylor has not Proven that Plea Withdrawal is Necessary to Correct a Manifest Injustice

¶48  The circuit court has discretion to determine whether a plea should be withdrawn, and a plea will not be disturbed unless the defendant establishes by clear and convincing evidence that failure to withdraw the guilty or no contest plea will result in a manifest injustice.  <u>Cross</u>, 326 Wis. 2d 492, ¶20 (citing <u>Trochinski</u>, 253 Wis. 2d 38, ¶15; <u>Thomas</u>, 232 Wis. 2d 714, ¶16).  The clear and convincing standard for plea

---

[16] Under Wis. Stat. § 961.41(1m)(h), manufacturing four or less marijuana plants is a Class I felony, and manufacturing more than four but less than twenty plants is a Class H felony. The maximum term of imprisonment for a Class I felony is three years and six months, and the maximum term of imprisonment for a Class H felony is six years.  Wis. Stat. § 939.50(3)(h)——(i).

withdrawal after sentencing, which is higher than the "fair and just" standard before sentencing, "reflects the State's interest in the finality of convictions, and reflects the fact that the presumption of innocence no longer exists." Id., ¶42. The higher burden "is a deterrent to defendants testing the waters for possible punishments." State v. Nawrocke, 193 Wis. 2d 373, 379-80, 534 N.W.2d 624 (Ct. App. 1995) (citing State v. Booth, 142 Wis. 2d 232, 237, 418 N.W.2d 20 (Ct. App. 1987)).

¶49 Showing that a plea was not entered knowingly, intelligently, and voluntarily is one way to prove a manifest injustice. The defendant can otherwise establish a manifest injustice by showing that there has been a "serious flaw in the fundamental integrity of the plea." Id. at 379. Disappointment in the eventual punishment does not rise to the level of a manifest injustice. Id. Prior cases have recognized nonexhaustive examples of manifest injustice:

> (1) ineffective assistance of counsel; (2) the defendant did not personally enter or ratify the plea; (3) the plea was involuntary; (4) the prosecutor failed to fulfill the plea agreement; (5) the defendant did not receive the concessions tentatively or fully concurred in by the court, and the defendant did not reaffirm the plea after being told that the court no longer concurred in the agreement; and, (6) the court had agreed that the defendant could withdraw the plea if the court deviated from the plea agreement.

State v. Krieger, 163 Wis. 2d 241, 251 n.6, 471 N.W.2d 599 (Ct. App. 1991) (citing ABA Standards for Criminal Justice sec. 14-

2.1(b)(ii)(A)——(F) (2d ed. 1980 & Supp. 1986)).[17] "The reviewing court looks at the entirety of the record to determine whether, considered as a whole, the record supports the assertion that manifest injustice will occur if the plea is not withdrawn." Cain, 342 Wis. 2d 1, ¶31.

¶50 In this case, the State argues that the manifest injustice test under Reppin governs whether Taylor should be allowed to withdraw his plea.[18] State v. Reppin, 35 Wis. 2d 377, 381, 151 N.W.2d 9 (1967). The State argues that in Reppin, this

---

[17] See also State v. Cain, 2012 WI 68, ¶26, 342 Wis. 2d 1, 816 N.W.2d 177. In addition to adopting the ABA's examples of manifest injustice, Wisconsin courts have found that there may be manifest injustice in other situations. Id., ¶26 n.6. For example, defendants have previously attempted to overturn a conviction or withdraw a guilty or no contest plea where new evidence was discovered. See State v. Krieger, 163 Wis. 2d 241, 471 N.W.2d 599 (Ct. App. 1991); State v. Nawrocke, 193 Wis. 2d 373, 534 N.W.2d 624 (Ct. App. 1995). Manifest injustice also occurs if the circuit court fails to establish a factual basis that, as admitted by the defendant, constitutes the offense pleaded to. State v. Thomas, 2000 WI 13, ¶17, 232 Wis. 2d 714, 605 N.W.2d 836 (citation omitted). See also 9 Christine M. Wiseman & Michael Tobin, Wisconsin Practice Series: Criminal Practice & Procedure § 23:32 (2d ed. 2008 & Supp. 2012).

[18] The State's argument goes further, arguing that State v. Reppin, 35 Wis. 2d 377, 151 N.W.2d 9 (1967) is the only standard that should govern the withdrawal of Taylor's plea and that the Reppin standard survives after Bangert, Brown, and Cross. The State argues that Bangert and its progeny have shifted the burden, but that in this case, the manifest injustice standard is the only test necessary to determine if Taylor may withdraw his plea. However, when a defendant seeks to withdraw his plea based on an alleged violation of Wis. Stat. § 971.08 or other court-mandated duty, the court should analyze the alleged error under Bangert and, if necessitated by the defendant's motion, under the manifest injustice standard.

32

court adopted the ABA's examples of what constitutes manifest injustice, see id. at 385-86 & n.2, and that the ABA commentary expressly stated that "[f]or example, if the judge misstates the maximum penalty as being lower than that provided by law but the defendant's sentence does not exceed that stated as possible by the judge, there is no manifest injustice."  ABA Standards for Criminal Justice, Commentary to Standard 14-2.1(b)(ii).

¶51  Taylor argues that the Reppin manifest injustice test has been supplanted by the Bangert line of cases.  Taylor also argues that even if there were still a Reppin standard, the Reppin case stated that the four examples of manifest injustice it adopted were not exhaustive, and that the Reppin case did not adopt the ABA commentary upon which the State relies.

¶52  In this case, Taylor has not established by clear and convincing evidence that withdrawal of his plea is necessary to correct a manifest injustice.  Taylor has not demonstrated that there was a "serious flaw in the fundamental integrity of the plea."  Nawrocke, 193 Wis. 2d at 379.  First, the circuit court informed Taylor that he could receive a maximum term of imprisonment of six years.  Taylor received a six-year term of imprisonment.[19]  In other words, Taylor received a sentence that he was verbally informed he could receive.

---

[19] The sentencing transcript evinces the judge's belief that Taylor is a habitual criminal who deserves the maximum possible punishment:

> You've been given every opportunity in the community, Mr. Taylor, and I wish that it was a situation that I could impose probation, but it's not.

¶53 As previously discussed, this record makes it abundantly clear that Taylor was informed of the potential eight-year term of imprisonment. There were several court hearings that preceded his plea where the charges and penalties were discussed. To conclude now that he did not know of the penalty enhancer, we would have to assume that both Taylor and his attorney repeatedly misrepresented to the court that they had received, read, and understood the criminal complaint, information, and plea questionnaire. Based on the record, we conclude that Taylor was aware of the potential eight-year term of imprisonment.

¶54 Therefore, it was not manifestly unjust to deny Taylor's motion to withdraw his no contest plea where (1) the circuit court informed Taylor at the plea colloquy that he could receive a six-year term of imprisonment; (2) Taylor actually received a six-year term of imprisonment; and (3) the record is

---

The time has come, Mr. Taylor, for you to feel the significant consequences of a prison term because you've earned that. You've earned that by just simply continuing on your own selfish road in life.

You've had your probations revoked five times. . . .

. . . .

You've lived a criminal lifestyle, Mr. Taylor, and it's not going to stop until you decide to make it stop, and I can't let you free in the community to make more victims. Our community is tired of that. Everything that could be done for you in this community and others has been done.

abundantly clear that Taylor was nonetheless aware of the two-year penalty enhancer from the alleged repeater.

IV. CONCLUSION

¶55 We hold that the defendant's plea was entered knowingly, intelligently, and voluntarily when the record makes clear that the defendant knew the maximum penalty that could be imposed and was verbally informed at the plea hearing of the penalty that he received.  Therefore, the circuit court did not err by denying Taylor's postconviction motion to withdraw his no contest plea.

¶56 Further, plea withdrawal "remains in the discretion of the circuit court and will not be disturbed unless the defendant shows that it is necessary to correct a manifest injustice." Cross, 326 Wis. 2d 492, ¶4; Cain, 342 Wis. 2d 1, ¶20.  Taylor has not demonstrated that withdrawal of his plea is necessary to correct a manifest injustice.

*By the Court.*—The judgment and order of the circuit court is affirmed.

¶57 DAVID T. PROSSER, J. *(concurring).* This case requires the court to address an alleged <u>Bangert</u> violation; that is, an alleged violation of Wis. Stat. § 971.08, or other mandatory requirements for a plea colloquy, set out in <u>State v. Bangert</u>, 131 Wis. 2d 246, 389 N.W.2d 12 (1986), and subsequent cases such as <u>State v. Brown</u>, 2006 WI 100, 293 Wis. 2d 594, 716 N.W.2d 906, and <u>State v. Cross</u>, 2010 WI 70, 326 Wis. 2d 492, 786 N.W.2d 64.

¶58 The defendant entered a plea of no contest to a charge of uttering a forgery. After he was sentenced, he moved to withdraw his plea on grounds that the plea was not knowing, intelligent, and voluntary. His motion relied upon <u>Bangert</u> principles, alleging, first, that his plea colloquy was deficient because the court did not inform him of the correct maximum penalty for a conviction under Wis. Stat. § 939.50(3)(h), with a repeater enhancement under Wis. Stat. § 939.62(1)(b) and (2); and, second, that he did not know or understand the correct maximum penalty when he entered his plea.

¶59 The circuit court denied the defendant's postconviction motion without conducting an evidentiary hearing. Had such an evidentiary hearing been held, the State would have been required to prove that the defendant's plea was knowing, intelligent, and voluntary, notwithstanding a deficiency in the plea colloquy.

¶60 Most members of the court are satisfied that the defendant is not entitled to withdraw his plea because his plea was knowing, intelligent, and voluntary. Most members of the

1

court are willing to reach this conclusion without affording the defendant a <u>Bangert</u> hearing.

¶61 The real issue in this case is why the defendant does not get a <u>Bangert</u> hearing. My principal purpose in writing separately is to address this issue.

I

¶62 This court has set standards that a defendant must meet if he seeks to withdraw his plea. <u>See</u> <u>State v. Cain</u>, 2012 WI 68, ¶24, 342 Wis. 2d 1, 816 N.W.2d 177. When a defendant moves to withdraw his plea before sentencing, the circuit court should freely allow the withdrawal if the defendant supplies any "fair and just reason" unless withdrawal would substantially prejudice the prosecution. <u>Id.</u> (quoting <u>State v. Jenkins</u>, 2007 WI 96 ¶2, 303 Wis. 2d 157, 736 N.W.2d 240). After sentencing, however, the defendant must show that withdrawal is necessary to correct a "manifest injustice." <u>Id.</u> (quoting <u>Jenkins</u>, 303 Wis. 2d 157, ¶2 n.2).

¶63 This court adopted "the manifest injustice test" in <u>State v. Reppin</u>, 35 Wis. 2d 377, 386, 151 N.W.2d 9 (1967). The test was based on the tentative draft on <u>Standards Relating to Pleas of Guilty</u> issued by the American Bar Association Project on Minimum Standards for Criminal Justice in February 1967. <u>Id.</u> at 385.[1] The <u>Reppin</u> court said:

---

[1] The ABA House of Delegates subsequently approved the tentative draft, as amended, in March 1968. Am. Bar Ass'n Project on Minimum Standards for Criminal Justice, <u>Standards Relating to Pleas of Guilty</u> (Approved Draft, 1968).

2

These standards adopt the "manifest injustice" test of Rule 32(d) of the Federal Rules of Criminal Procedure and implement[ ] it with four factual situations which the advisory committee believes independently establish manifest injustice <u>when proved by the defendant</u>. We agree and adopt this standard. We think too the four fact situations are not exhaustive of situations which might constitute manifest injustice. And, a court would abuse its discretion if it denied a request to withdraw a plea of guilty when any one of these four grounds was proved.

<u>Id.</u> at 386 (emphasis added) (footnote omitted).

¶64 The four fact situations identified by the advisory committee were as follows:

2.1 Plea[] withdrawal.

(a) . . . .

(ii) Withdrawal is necessary to correct a manifest injustice whenever the defendant proves that:

(1) he was denied the effective assistance of counsel guaranteed to him by constitution, statute, or rule;

(2) the plea was not entered or ratified by the defendant or a person authorized to so act in his behalf;

(3) the plea was involuntary, or was entered without knowledge of the charge or that the sentence actually imposed could be imposed; or

(4) he did not receive the charge or sentence concessions contemplated by the plea agreement and the prosecuting attorney failed to seek or not to oppose these concessions as promised in the plea agreement.

<u>Id.</u> at 385 n.2.

3

¶65 In the years following the Reppin decision, the court repeatedly quoted (in whole or in part), or alluded to, the four fact situations adopted in Reppin.[2]

¶66 Over time, however, the court began to shift its focus from the "manifest injustice" test to the development of rules for particular fact situations. For instance, our rules for plea withdrawal because of a defective plea colloquy were established in Bangert and restated in Brown. Our rules for plea withdrawal on account of ineffective assistance of counsel are found in State v. Bentley, 201 Wis. 2d 303, 548 N.W.2d 50 (1996), and State v. Allen, 2004 WI 106, 274 Wis. 2d 568, 682 N.W.2d 433. In recent years, our attention has often been directed more toward the application of these rules than to the broader mantra of "manifest injustice."

---

[2] See, e.g., State v. Rock, 92 Wis. 2d 554, 558–59, 285 N.W.2d 739 (1979); State v. Lee, 88 Wis. 2d 239, 248–49, 276 N.W.2d 268 (1979); Spinella v. State, 85 Wis. 2d 494, 498, 271 N.W.2d 91 (1978); Hatcher v. State, 83 Wis. 2d 559, 564, 266 N.W.2d 320 (1978); State v. Jackson, 69 Wis. 2d 266, 270–72, 230 N.W.2d 832 (1975); Libke v. State, 60 Wis. 2d 121, 124–25, 208 N.W.2d 331 (1973); Young v. State, 49 Wis. 2d 361, 366, 182 N.W.2d 262 (1971); Kruse v. State, 47 Wis. 2d 460, 464–65, 177 N.W.2d 322 (1970); State v. Weidner, 47 Wis. 2d 321, 328–29, 177 N.W.2d 69 (1970); State v. Wolfe, 46 Wis. 2d 478, 484, 175 N.W.2d 216 (1970); Meunier v. State, 46 Wis. 2d 271, 277, 174 N.W.2d 277 (1970); Brisk v. State, 44 Wis. 2d 584, 587, 172 N.W.2d 199 (1969); Ernst v. State, 43 Wis. 2d 661, 666, 170 N.W.2d 713 (1969); State v. Biastock, 42 Wis. 2d 525, 529, 167 N.W.2d 231 (1969); Reiff v. State, 41 Wis. 2d 369, 372, 164 N.W.2d 249 (1969); Galvin v. State, 40 Wis. 2d 679, 682 n.1, 162 N.W.2d 622 (1968); LeFebre v. State, 40 Wis. 2d 666, 669–70, 162 N.W.2d 544 (1968); State v. Harrell, 40 Wis. 2d 187, 192–93, 161 N.W.2d 223 (1968); Cresci v. State, 36 Wis. 2d 287, 293, 152 N.W.2d 893 (1967). See also Wiseman & Tobin, 9 Wis. Practice: Criminal Practice and Procedure § 23:32 (2d ed. Supp. 2012).

¶67 In 1991 the court of appeals rewrote the four fact situations adopted in Reppin and added two more, without much notice or explanation of what it was doing. See State v. Krieger, 163 Wis. 2d 241, 251 n.6, 471 N.W.2d 599 (Ct. App. 1991). The Krieger court's new formulation has been followed uncritically[3] even though the two additional "factual situations," id. at 251 n.6, relate to judicial participation in plea bargaining, which is not approved under Wisconsin law. See State v. Hampton, 2004 WI 107, ¶27, 274 Wis. 2d 379, 683 N.W.2d 14.

¶68 The majority opinion states that "Taylor's request for plea withdrawal is properly analyzed under the manifest injustice framework. Taylor has not proven that withdrawal is necessary to correct a manifest injustice." Majority op., ¶43. These statements follow an extensive discussion of Taylor's claim of a Bangert violation (because the circuit court did not correctly state the maximum penalty during the plea colloquy) and this court's conclusion that Taylor's plea was knowing, intelligent, and voluntary nonetheless.

¶69 "When a defendant seeks to withdraw a guilty plea after sentencing, he must prove, by clear and convincing evidence, that a refusal to allow withdrawal of the plea would result in 'manifest injustice.'" Brown, 293 Wis. 2d 594, ¶18 (citing State v. Thomas, 2000 WI 13, ¶16, 232 Wis. 2d 714, 605

---

[3] State v. Cain, 2012 WI 68, ¶26, 342 Wis. 2d 1, 816 N.W.2d 177; State v. Daley, 2006 WI App 81, ¶20 n.3, 292 Wis. 2d 517, 716 N.W.2d 146; State v. Washington, 176 Wis. 2d 205, 213-14 n.2, 500 N.W.2d 331 (Ct. App. 1993).

5

N.W.2d 836). "One way for a defendant to meet this burden is to show that he did not knowingly, intelligently, and voluntarily enter" his plea. Brown, 293 Wis. 2d 594, ¶18 (citing State v. Trochinski, 2002 WI 56, ¶15, 253 Wis. 2d 38, 644 N.W.2d 891). Here, the court has determined that Taylor knowingly, intelligently, and voluntarily entered his plea. Majority op., ¶8. In making this determination, the court has rejected the defendant's specific complaint about the plea colloquy. Thus, I do not understand the need for a separate section on manifest injustice.

¶70 A defendant could expound multiple theories for plea withdrawal and if he did, the court would have to address each of the theories. Here, however, Taylor has advanced only one theory——a Bangert violation leading to a plea that was not knowing, intelligent, and voluntary. Once that single claim has been rejected, the case is over.

¶71 The manifest injustice test was adopted more than 40 years ago. Reppin, 35 Wis. 2d at 386. The court should find a way to carefully update the "manifest injustice" test, with a comprehensive catalog of fact situations requiring withdrawal, when a defendant satisfies his burden of proof, along with citations supporting these situations.

II

¶72 Once again, the real question in this case is why Taylor did not get a Bangert hearing.

¶73 Taylor filed a postconviction motion stating that he was "misinformed by the court of the maximum penalty that he

6

faced upon conviction, and [he] did not understand the true maximum." Taylor affirmatively alleged that he did not know the correct maximum penalty that he faced at the time he entered his no contest plea and moved the court to withdraw his plea "on the ground that his plea was not knowingly, voluntarily and intelligently entered."

¶74   In Brown, the court said:

> A circuit court's failure to fulfill a duty at the plea hearing will necessitate an evidentiary hearing if a defendant's postconviction motion alleges he did not understand an aspect of the plea because of the omission [or misstatement].
>
> . . . .
>
> After sentencing, in cases that involve an alleged deficiency in the plea colloquy, an attempt to withdraw a guilty plea proceeds as follows. The defendant must file a postconviction motion under Wis. Stat. § 809.30 or other appropriate statute. The motion must (1) make a prima facie showing of a violation of Wis. Stat. § 971.08(1) or other court-mandated duties by pointing to passages or gaps in the plea hearing transcript; and (2) allege that the defendant did not know or understand the information that should have been provided at the plea hearing.
>
> When a Bangert motion is filed, it is reviewed by the court. If the motion establishes a prima facie violation of Wis. Stat. § 971.08 or other court-mandated duties and makes the requisite allegations, the court must hold a postconviction evidentiary hearing at which the state is given an opportunity to show by clear and convincing evidence that the defendant's plea was knowing, intelligent, and voluntary despite the identified inadequacy of the plea colloquy. When the defendant has met his two burdens, the burden of producing persuasive evidence at the evidentiary hearing shifts to the state.

Brown, 293 Wis. 2d 594, ¶¶36, 39-40 (citations and footnotes omitted).

7

¶75 Against this background, I find it difficult to contend that Taylor's motion does not satisfy the requisite criteria for a Bangert hearing. Why, then, did he not get an evidentiary hearing?

¶76 Taylor did get a postconviction hearing. He was brought to Outagamie County from the Racine Correctional Institution and appeared in court on April 21, 2011.

¶77 In my view, Taylor did not receive an evidentiary hearing because there would have been no point in taking testimonial evidence.

¶78 The court already understood that Taylor had come to court on August 23, 2010, for the purpose of entering a plea. There was evidence in the record that the defendant had read the complaint, which correctly stated the maximum sentence, and had met with his attorney to discuss a negotiated plea agreement and go over the plea questionnaire. The plea questionnaire included information about the maximum penalty. Defense counsel made a notation: "8 yrs prison/$10,000 fine or both." "Yrs" is shorthand for "years." "8 yrs prison" is likely shorthand for "8 years of imprisonment."

¶79 The record also showed that the court had made a conscientious effort to discharge its duties under Wis. Stat. § 971.08, Bangert, and Brown, and had succeeded except for an inadvertent misstatement of the maximum penalty. The court knew, in considering the postconviction motion, that it had informed Taylor of more than the penalty he actually received,

8

so that the court's misstatement had no adverse impact on Taylor under the circumstances.

¶80 Taylor's claim that he lacked understanding of the maximum sentence was objectively incredible given the ample evidence in the record of the correct information he had received. The record also revealed that Taylor had a lengthy criminal history so that he had familiarity with the courts. Multiple charges of uttering a forgery were pending in Brown County on the date of the plea.

¶81 If we look back to the foundational case of Reppin, we are reminded that the defendant had the burden of proof in all four fact situations. Reppin, 35 Wis. 2d at 386. This burden of proof has been relaxed in defective plea colloquy situations because evidence of a deficient plea colloquy should be obvious in the plea hearing record, and a defendant's allegation that he did not understand something because of the deficiency, while "admittedly, conclusory," would be "difficult to expand on," except through sworn testimony. Hampton, 274 Wis. 2d 379, ¶¶57-59.

¶82 This court is firmly committed to the principle that when a defendant files a motion showing a prima facie Bangert violation and the requisite claim that he lacked understanding because of a deficiency in the plea colloquy, he is entitled to a burden-shifting Bangert hearing. Adherence to this principle tends to encourage careful, conscientious plea colloquies. Nonetheless, there are often limits to even the most salutary principle. Courts must not be rendered powerless to reject a

9

conclusory allegation——"I didn't know"——that is disproven by the existing record.[4]

¶83 In Birts v. State, the court said: "We have held that in determining whether to grant a motion to withdraw a guilty plea, 'the trial court is not obligated to accept the defendant's statements as verities.'" Birts, 68 Wis. 2d 389, 394, 228 N.W.2d 351 (1975) (quoting Ernst v. State, 43 Wis. 2d 661, 668, 170 N.W.2d 713 (1969)). A court is not obligated to accept a defendant's statement if the record demonstrates that the statement is not credible.[5]

---

[4] State v. Burns, 226 Wis. 2d 762, 594 N.W.2d 799 (1999), is a classic example of an appellate court's common sense review of the record:

> We affirm the judgment of conviction . . . even though the defendant did not expressly and personally articulate a plea of no contest on the record in open court, because the only inference possible from the totality of the facts and circumstances in the record is that the defendant intended to plead no contest.

Burns, 226 Wis. 2d at 764 (emphasis added).

[5] In his postconviction motion, the defendant asserted that "[d]uring the plea colloquy, the court erroneously informed Mr. Taylor that the maximum penalty he faced was six years of imprisonment——that is, the penalty without the enhancer. (Plea hearing transcript at 7)." At the hearing on the motion, the defendant's postconviction counsel discussed State v. Cross, 2010 WI 70, 326 Wis. 2d 492, 786 N.W.2d 64, and asserted that "the court . . . did go on to say that in a case where the defendant was informed that a penalty was lower than it is[,] that remains a potential Bangert violation."

10

¶84  In this case, requiring the State to establish through testimonial evidence the notice about the sentence that the defendant could receive——in light of the lesser sentence the defendant actually did receive, and in light of the information in the record——was simply unnecessary.

¶85  Having read this court's decision in <u>Brown</u>, the circuit court understood that there are times when a defendant "should not be permitted to game the system by taking advantage of judicial mistakes." <u>Brown</u>, 293 Wis. 2d 594, ¶37. This was one of those times.

---

The dissent has reformulated the defendant's argument. Instead of arguing that the circuit court <u>understated</u> the maximum penalty at the plea hearing, the dissent asserts that the defendant "was not told in straight, simple English that the punishment for the crime was eight years' imprisonment." Dissent, ¶91. "The circuit court . . . advised the defendant (incorrectly) of the term of confinement without advising him correctly of the term of imprisonment." <u>Id.</u>, ¶102 n.19.

The dissent acknowledges that the circuit court will satisfy <u>Bangert</u>, <u>Brown</u>, and Wis. Stat. § 971.08(1)(a) by stating the maximum term of imprisonment, "without explicitly stating the component parts of the bifurcated sentence," i.e., confinement and supervision. <u>Id.</u>, ¶101. Yet this concession undermines Taylor's position because the complaint and information both correctly stated the maximum term of imprisonment and Taylor admitted that he had read and understood the complaint. In fact, the complaint states that Taylor supplied the information on his prior convictions to Sergeant Michael Daul of the Appleton Police Department.

There is a very high likelihood that Taylor's attorney, Michael Dally, explained the meaning of eight years of imprisonment to Taylor. But if Dally actually spoke of eight years "in prison," instead of "imprisonment," just as the circuit court spoke of six years "in prison," then the case is covered by this court's decision in <u>Cross</u>.

11

¶86 Requiring the court to conduct an evidentiary hearing to receive what was already evident throughout the record would have served no legitimate purpose in this case.

¶87 For the foregoing reasons, I respectfully concur.

12

¶88 SHIRLEY S. ABRAHAMSON, C.J. *(dissenting)*. The case before us presents a clear example of a flawed plea colloquy under Bangert,[1] Brown,[2] and Wis. Stat. § 971.08(1)(a).[3] According to the case law and the statute, in taking a guilty plea or no-contest plea the circuit court must establish the accused's understanding of the range of punishments which the crime carries.

¶89 The concurrence has it right: The defendant has met his two burdens under Bangert, which entitles him to an evidentiary hearing: (1) The defendant has made a prima facie showing of a violation of Wis. Stat. § 971.08(1)(a); and (2) The defendant has alleged that he did not know or understand the information (the range of punishments) that should have been provided at the plea hearing.[4]

---

[1] Prior to accepting a guilty plea, it is the circuit court's duty "[t]o establish the accused's understanding of . . . the range of punishments which [the crime] carries . . . ." State v. Bangert, 131 Wis. 2d 246, 262, 389 N.W.2d 12 (1986).

[2] "During the course of the plea hearing, the court must address the defendant personally and . . . establish the defendant's understanding of the . . . range of punishments to which he is subjecting himself by entering a plea . . . ." State v. Brown, 2006 WI 100, ¶35, 293 Wis. 2d 594, 716 N.W.2d 906.

[3] Wisconsin Stat. § 971.08(1)(a) provides in relevant part as follows: "Before the [circuit] court accepts a plea of guilty or no contest, it shall . . . [a]ddress the defendant personally and determine that the plea is made voluntarily with understanding of . . . the potential punishment if convicted."

[4] Concurrence, ¶¶73-75.

¶90 Thus, the question posed for this court, as the concurrence correctly and simply explains, is "[w]hy, then, did he not get an evidentiary hearing?"[5]

¶91 This is an easy case: According to the record of the initial appearance,[6] the bail hearing,[7] the waiver of a preliminary hearing,[8] the arraignment,[9] the plea hearing,[10] and the sentencing hearing,[11] the defendant either was not told of the punishment or was not told in straight, simple English that

---

In Brown, the court concluded that the failure to advise the defendant that the punishment for each charge could run consecutively did not entitle the defendant to an evidentiary hearing "in the absence of any allegation that the defendant did not understand the effect of multiple charges on his sentence." Brown, 293 Wis. 2d 594, ¶78.

I also agree with the concurrence, Part I, ¶¶62-71, that the majority errs in undertaking a manifest injustice analysis. The manifest injustice analysis is unnecessary under the facts of this case. The Bangert analysis suffices, as explained by the concurrence. This conclusion is apparent in the majority opinion itself. The majority opinion's manifest injustice analysis simply repeats its own Bangert analysis. See also State v. Lichty, 2012 WI App 126, ¶¶8, 9, 344 Wis. 2d 733, 823 N.W.2d 830 (explaining the relationship of a Bangert violation and the manifest injustice approach).

[5] Concurrence, ¶¶61, 72, 75.

[6] May 26, 2009 (defendant did not appear).

[7] August 20, 2009 (nothing said of the penalty).

[8] November 24, 2009 (nothing said of the penalty).

[9] January 25, 2010 (Attorney states that he received a copy of the information. Formal reading of information was waived).

[10] August 23, 2010.

[11] October 11, 2010.

the punishment for the crime was eight years' imprisonment.[12] Because the defendant was never told the correct punishment, no one can reach the conclusion on the basis of the record that the defendant knew or understood the penalty. I therefore conclude that the defendant is entitled to an evidentiary hearing.

¶92 The majority and concurring opinions offer different explanations for not affording the defendant an evidentiary hearing, but both rely on the record to conclude that the defendant must have known (should have known, would have known, or is presumed to have known) the penalty for the crime.

¶93 At their core, the majority and concurring opinions are changing the law. The present law requires that a court determine whether the individual defendant (to use the Bangert terminology) "in fact" knows or understands the information that should have been provided at the plea hearing——a subjective test.[13]

¶94 The refusal of the majority and concurring opinions to afford the defendant an evidentiary hearing can be read as declaring that a court may determine from the paper record that a reasonable person must have known (should have known, would have known, or is presumed to have known) the information the

---

[12] The defendant's brief states the issue before the court as follows: Is a defendant's no contest plea knowing, voluntary and intelligent when the defendant is mistakenly informed by the trial court that the maximum sentence was six years rather than the correct eight years imprisonment and believes that the maximum sentence is lower than it actually is?

[13] Bangert, 131 Wis. 2d at 257, 274-75 (citing Boykin v. Alabama, 395 U.S. 238, 242-43 (1969)).

court was required to provide at the plea hearing——an objective test. The majority and concurring opinions seem to be substituting an objective test for the subjective test set forth in Bangert, Brown, and Wis. Stat. § 971.08(1)(a). Neither the majority opinion nor the concurring opinion considers the constitutional implications of their respective approaches.

¶95 Because the majority and concurring opinions drastically break with precedent, I dissent.

¶96 Although the majority and concurring opinions offer various and different rationales for their ultimate decision in the present case,[14] they essentially reason that no evidentiary

---

[14] The majority opinion states and restates its rationale and holding in several different ways so that it is difficult to determine what test the majority adopts or uses to determine that the defendant's plea was knowingly, intelligently, and voluntarily made.

The majority opinion can be read in a number of ways:

The defendant's plea is knowing, intelligent, and voluntary because the complaint and information stated the correct maximum penalty. Majority opinion, passim.

The defendant's plea is knowing, intelligent, and voluntary because the record makes clear that the defendant knew the maximum penalty that could be imposed and the defendant was orally informed at the plea hearing of the penalty he received. Majority op., ¶¶8, 28.

The defendant's plea is knowing, intelligent, and voluntary because the defendant was orally informed by the circuit court at the plea hearing of the sentence that he actually received. Majority op., ¶¶8, 28, 39, 42, 52, 54.

The defendant's plea is knowing, intelligent, and voluntary because the circuit court's misstatement of the penalty is an insubstantial defect. Majority op., ¶¶34, 39.

4

hearing is needed because "the record makes clear that the defendant knew the maximum penalty . . . . The record in this case is replete with evidence that [the defendant] was aware of the potential eight-year term of <u>imprisonment</u>, comprised of a six-year term of imprisonment for the underlying charge and an additional two-year term of imprisonment from the alleged repeater [charge]." Majority op., ¶¶8, 35 (emphasis added).

¶97 In contrast, I conclude that the record clearly and unambiguously demonstrates that the defendant was never told that he was subject to an eight-year term of imprisonment. Indeed the record is replete with inconsistencies and confusion by the circuit court and the defense counsel (with the

---

• The majority opinion does not attempt to define "insubstantial defect." By applying an insubstantial defect test, is the majority opinion really applying a harmless error test by a different name?

• Is the majority opinion abrogating the <u>Cross</u> decision with regard to the doctrine of insubstantial error?

The <u>Cross</u> opinion states that when "the sentence communicated to the defendant is higher, but not substantially higher, than that authorized by law, the incorrectly communicated sentence does not constitute a <u>Bangert</u> violation and will not, as a matter of law, be sufficient to show that the defendant was deprived of his constitutional right to due process of law. . . . We conclude that Cross has not made a prima facie showing that the circuit court failed to comply with Wis. Stat. § 971.08 or the requirements outlined in <u>Brown</u> and <u>Bangert</u> . . . ." <u>State v. Cross</u>, 2010 WI 70, ¶¶40-41, 326 Wis. 2d 492, 786 N.W.2d 64. In contrast with <u>Cross</u>, the majority opinion treats the instant case as one with a flawed plea colloquy; treats the error in the plea colloquy as an insubstantial defect; and requires the circuit court to review the record to determine whether the plea was entered knowingly, intelligently, and voluntarily.

5

prosecuting attorney remaining silent) regarding the maximum penalty the defendant faced.[15]

¶98 Because the defendant was never apprised of the maximum penalty, this court cannot determine that the defendant knew or understood the maximum penalty——information that should have been provided at the plea hearing. This court should order an evidentiary hearing in the present case to determine whether the defendant did know and understand the maximum penalty he faced.[16]

¶99 Before I turn to the record, I must state the actual maximum penalty. Knowing the actual maximum penalty helps put in perspective the inaccurate information the defendant received.

---

[15] Indeed it is often difficult to follow the majority opinion's discussion of what the defendant knew as the opinion continually shifts, not always precisely or correctly, between referring to "imprisonment" (which encompasses confinement and extended supervision) and "prison" (which encompasses only confinement).

For a discussion of the statutory use of the term "imprisonment," see Wis. Stat. § 973.01(1) and State v. Cole, 2003 WI 59, ¶16, 262 Wis. 2d 167, 663 N.W.2d 700 (under Wis. Stat. § 973.01, the word "imprisonment" refers to a "bifurcated sentence" consisting of a "term of confinement in prison followed by a term of extended supervision."). See also State v. Jackson, 2004 WI 29, ¶5 n.4, 270 Wis. 2d 113, 676 N.W.2d 872 ("Under Truth-in-Sentencing legislation, the term 'imprisonment' does not mean time in prison. Rather, 'imprisonment' consists of both the time of confinement (in prison) and the time following the confinement spent on extended supervision.").

[16] "If a defendant does not understand . . . the implications of the plea, he should not be entering the plea, and the court should not be accepting the plea." Brown, 293 Wis. 2d 594, ¶37.

6

¶100 According to the defendant's brief and my calculations, the maximum penalty was <u>imprisonment</u> not to exceed <u>eight years</u>, which could consist of not more than <u>five years</u> of <u>initial confinement</u> (<u>prison</u>) and not more than <u>three years</u> of <u>extended supervision</u>.[17]

¶101 A circuit court's telling the defendant at the plea hearing the maximum term of imprisonment, without explicitly

---

[17] It takes some time and effort to understand how the penalty statutes work together in the instant case.

Here is how I calculated the maximum penalty when the defendant is charged with Uttering a Forgery, Repeater, a Class H Felony.

The potential penalty for a Class H felony is "a fine not to exceed $10,000 or imprisonment not to exceed 6 years, or both." Wis. Stat. § 939.50(3)(h).

"For a Class H felony, the term of confinement in prison may not exceed 3 years." Wis. Stat. § 973.01(2)(b)8.

"The term of extended supervision may not be less than 25% of the length of the term of confinement in prison imposed under par. (b) and, for a classified felony, is subject to whichever of the following limits is applicable: . . . For a Class H felony, the term of extended supervision may not exceed 3 years." Wis. Stat. § 973.01(2)(d)5.

Because the defendant was a repeater due to prior convictions for misdemeanors, "[a] maximum term of imprisonment of more than one year but not more than 10 years may be increased by not more than 2 years if the prior convictions were for misdemeanors . . . ." Wis. Stat. § 939.62(1)(b).

"Subject to the minimum period of extended supervision required under par. (d), the maximum term of confinement in prison specified in par. (b) may be increased by any applicable penalty enhancement statute. If the maximum term of confinement in prison specified in par. (b) is increased under this paragraph, the total length of the bifurcated sentence that may be imposed is increased by the same amount." Wis. Stat. § 973.01(2)(c).

stating the component parts of the bifurcated sentence, satisfies <u>Bangert</u>, <u>Brown</u>, and Wis. Stat. § 971.08(1)(a).[18]

¶102 The majority opinion gratuitously and cavalierly warns that a circuit court's advising a defendant of the possible term of confinement and extended supervision at the plea hearing "could be misleading." Majority op., ¶42 n.12.[19]

¶103 The majority opinion thus opens the door for additional post-conviction motions. I have read many transcripts of plea colloquies; circuit courts often state the component parts of the imprisonment during the plea colloquy, although they are not required to do so. The majority opinion should not be read to mean that the circuit court commits a "<u>Bangert</u>" error if it provides a defendant with information about the components of the bifurcated sentence, as long as the circuit court gives the defendant the correct information about the maximum term of imprisonment.

¶104 And now to the record.

¶105 The <u>complaint and information</u>——documents available to the circuit court, defense counsel, prosecuting attorney and the defendant——stated that the defendant could be "<u>imprisoned not more than six (6) years</u>" with an additional penalty <u>enhancer</u> of "<u>not more than 2 years</u>."

---

[18] <u>Lichty</u>, 344 Wis. 2d 733, ¶14 (citing <u>State v. Sutton</u>, 2006 WI App 118, ¶15, 294 Wis. 2d 330, 718 N.W.2d 146).

[19] The circuit court in the present case advised the defendant (incorrectly) of the term of confinement without advising him correctly of the term of imprisonment.

¶106 These are correct statements of the statutory language, although it takes some calculation and legal knowledge to translate the legalese found in the complaint and information into knowing and understanding that the maximum penalty is "imprisoned not more than eight (8) years." Thus it is not clear from the complaint and information that the defendant was apprised of the maximum penalty of eight years of imprisonment, as the majority repeatedly and inaccurately states.

¶107 Moreover, it would take a proverbial Philadelphia lawyer to figure out what "imprisoned" means in the complaint and information in the present case. The word "imprisoned" takes on special significance in the present case because of the enhanced penalty, and the record shows that the defendant was told about "prison," not about being "imprisoned."

¶108 Although the defendant stated he was familiar with the complaint and information, neither document stated the maximum penalty as eight years' imprisonment. Nevertheless, the majority opinion can be read to state that when the complaint and information in the record state the penalty in the exact terms of the statute, as they do in the present case——a circumstance that will likely occur frequently——the defendant has been adequately told of the maximum penalty and is held to know and understand the maximum penalty. Such a holding completely undercuts Bangert.

¶109 I therefore examine the rest of the record to determine whether the defendant was apprised of the maximum penalty and understood the maximum penalty of eight years'

9

imprisonment. I look at the plea colloquy and the plea questionnaire. Then I look at the sentencing hearing.

¶110 Neither the circuit court nor the defense attorney correctly translated the statutory penalty provisions in the complaint and information into plain English to advise the defendant of the correct maximum penalty in the plea colloquy or plea questionnaire, imprisonment for a maximum of eight years.

¶111 During the plea colloquy, the circuit court changed the description of the penalty, telling the defendant that he faced the possibility of "six years in prison." Majority op., ¶2.[20] The circuit court erred. The defendant was not subject to six years in prison. (Remember, six years in prison is not the same penalty as six years of imprisonment; his maximum prison (confinement) time, as I have stated previously and which never appears correctly in the record, is five years).

¶112 The plea questionnaire (obviously completed by the defense counsel and signed by the defendant) also errs in telling the defendant of the maximum penalty. The plea questionnaire states that the defendant could face a maximum penalty of "8 yrs prison." The defendant was not subject to an eight-year prison term. (Remember, eight years in prison (confinement) is not the same penalty as eight years of imprisonment; the defendant's maximum time in prison, which never appears correctly in the record, is five years). Once

---

[20] The transcript reads: "The Court: I could impose the maximum penalty here of a $10,000 fine or six years in prison or both if I thought that's what was necessary. Do you understand that?"

again, the defendant was told of a different and incorrect penalty.

¶113 Nevertheless, the concurrence inexplicably, inaccurately, and incorrectly states that the complaint, information, and plea questionnaire correctly stated the defendant's maximum penalty and that the defendant's knowledge was "already evident throughout the record." Concurrence, ¶¶78, 86.

¶114 Neither the defense counsel nor the prosecuting attorney offered assistance to the circuit court during the plea colloquy to state the maximum penalty correctly. Our prior cases impose a burden on the prosecutor to ensure that the plea colloquy is sufficient. "As we explained in Bangert, part of the reason the burden shifts from the defendant to the state is that this burden-shifting 'will encourage the prosecution to assist the trial court in meeting its § 971.08 and other expressed obligations.'"[21]

¶115 At the sentencing hearing, the circuit court again incorrectly stated the maximum punishment under the statute. The circuit court advised the defendant that the felony (with the penalty enhancer) was "punishable by a $10,000 fine or six years in prison or both, but then there is the two additional years of possible prison because of the repeater." So once again the defendant was advised he faced eight years in prison (confinement), not eight years' imprisonment.

_____

[21] Brown, 293 Wis. 2d 594, ¶40 n.24 (citation omitted) (quoting Bangert, 131 Wis. 2d at 275).

11

¶116 To summarize the record: The defendant was never explicitly told in plain English that the maximum penalty was eight years' imprisonment. The complaint and information were worded in terms of imprisonment——not more than six years for the offense, which may be increased by not more than two years for the repeater charge. But these documents did not translate the legalese into plain English or calculate the effect of the penalty enhancer on the potential term of imprisonment. The plea colloquy set forth the maximum penalty in terms of prison—— six years. The plea questionnaire set forth the maximum penalty in terms of prison——eight years. The defect in the plea hearing was not remedied at sentencing. Even at sentencing, the defendant was told incorrectly of a maximum prison term but was never told that the maximum penalty was eight years' imprisonment.

¶117 According to the record, the defendant was repeatedly given inconsistent and conflicting information about the maximum punishment he faced. When he was not told the maximum punishment, how can anyone conclude that the defendant knew and understood the maximum punishment? Nevertheless, the majority opinion concludes that on the basis of the complaint and information, the plea colloquy, and the plea questionnaire that the defendant was nonetheless aware of the "maximum eight-year

12

term of <u>imprisonment</u>."[22]  Majority op., ¶¶8, 35, 39.  The majority seems to reach its conclusion by substituting the word "imprisonment" for the word "prison" in the plea questionnaire.[23]  The only point in the record that the number eight appears is in the plea questionnaire, which incorrectly refers to eight years in prison.  The number five, the correct prison term, never appears in the record.

---

[22] The majority asserts: "<u>To conclude that Taylor was not aware of the maximum eight-year term of imprisonment</u>, we would have to assume that Taylor's trial counsel misrepresented, on the plea questionnaire form itself and to the court, that he had read the form with Taylor and that Taylor understood it.  We would also have to assume that Taylor misrepresented to the court that he had received, read, and understood the complaint and plea questionnaire form."  Majority op., ¶39 (emphasis added).

The irony, of course, is that defense counsel and the majority opinion confuse prison and imprisonment.  The concurrence rewrites defense counsel's notation of "8 yrs/prison" on the plea questionnaire, interpreting it as "<u>likely</u> shorthand for '8 years of imprisonment.'"  Concurrence, ¶22.  The concurrence also assumes that "[t]here is a <u>very high likelihood</u> that Taylor's attorney, Michael Dally, explained the meaning of eight years of imprisonment to Taylor."  Concurrence, ¶27 n.5.

Were we to grant the evidentiary hearing required by <u>Bangert</u>, we would not have to make any assumptions about the defendant's understanding and defense counsel's advice.  Whether a defendant is entitled to a <u>Bangert</u> hearing does not turn on this court's retrospective speculation of what defense counsel <u>likely</u> meant on the plea questionnaire or whether "there is a <u>very high likelihood</u>" that defense counsel properly explained the meaning of "eight years of imprisonment."

[23] Majority op., ¶39 (quoted at note 22, <u>supra</u>).  In <u>Brown</u>, 293 Wis. 2d 594, ¶12-13, 52-53, the plea colloquy was flawed but the defendant had stated on the record during the plea colloquy that he understood the charges, that he had had the complaint read to him, and that he had gone over the elements of the charges with his attorney.  This record was still not sufficient to refuse the defendant an evidentiary hearing.

¶118 As I explained previously, according to the defendant's brief and my calculations, the defendant was subject to a maximum penalty of <u>imprisonment</u> not to exceed <u>eight years</u>, which could consist of not more than <u>five years</u> of <u>initial confinement</u> (<u>prison</u>) and not more than <u>three years</u> of <u>extended supervision</u>. As I have shown, the defendant was never so advised, and nothing in the record demonstrates that the circuit court, prosecuting attorney, defense counsel, or the defendant knew the correct maximum penalty. The record is anything but clear and consistent in establishing that the defendant "in fact" knew the true and correct maximum penalty he faced. From this record the majority concludes not only that the defendant was told of the maximum penalty but that he knew and understood it.

¶119 I have, until now, focused on the majority opinion. The concurring opinion strikes out in a somewhat different direction, focusing more on the defendant's understanding of the maximum penalty. The concurring opinion concludes that the defendant does not "receive an evidentiary hearing because there would have been no point in taking testimonial evidence. . . . [The defendant's] claim that he lacked understanding of the maximum sentence was objectively incredible given the ample evidence in the record of the correct information he had received. . . . [A] defendant 'should not be permitted to game the system by taking advantage of judicial mistakes. . . .'" "Requiring the court to conduct an evidentiary hearing to receive what was already evident

14

throughout the record would have served no legitimate purpose in this case." Concurrence, ¶¶21, 24, 29, 30.

¶120 The concurrence worries about the defendant gaming the system. Concurrence, ¶29; see also majority op., ¶39. I do not favor allowing the defendant (or anyone else) to game the system. Here the defendant satisfied the Bangert requirements, requirements established by this court that entitle him to an evidentiary hearing. How is the defendant gaming the system?[24]

¶121 According to the concurring opinion, a circuit court should decide whether to hold a Bangert evidentiary hearing based on what it surmises the evidence will be at the evidentiary hearing and what it predicts the outcome of the evidentiary hearing will be about the defendant's knowledge and understanding. What legal principle or theory allows courts to decide whether to hold an evidentiary hearing based on court conjecture?

¶122 When the circuit court, prosecuting attorney, and defense counsel all failed to recognize that the defendant was being told different and inconsistent maximum penalties and failed to explain the correct maximum punishment, how can the majority and concurring opinions indifferently conclude that the defendant knew and understood that his charges carried a maximum sentence of eight years of imprisonment and not six or eight

---

[24] Justice Prosser, writing for the court in Brown, explained how to prevent a defendant from gaming the system: "Thus, only the [circuit] court, with the assistance of the district attorney, can prevent potential sandbagging by a defendant by engaging the defendant at the plea colloquy and making a complete record." Brown, 293 Wis. 2d 594, ¶38.

15

_years in prison_, numbers the defendant was given by the court and defense counsel?  The majority and concurring opinions are telling us (with straight faces) that although all the legally trained, courtroom-experienced participants in the plea colloquy and sentencing (namely the judge, the defense counsel, and the prosecuting attorney) displayed their ignorance of the correct maximum penalty, the defendant, the only participant in the plea hearing who did not have the benefit of a legal education, is the only participant who actually knew and understood the correct maximum penalty.  This cannot be right.

* * * *

¶123 Plea colloquies, indeed many, many plea colloquies, are being conducted every day in courtrooms across this state. Plea colloquies upon a plea of guilty or no contest are the "bread and butter" of criminal practice.  Plea colloquies are frequent and recurrent court events with constitutional overtones and ramifications.

¶124 More than 25 years ago, the court decided the _Bangert_ case.  The court has clearly and decisively adhered to _Bangert_ declaring that "[c]omplying with the requisite standards [of _Bangert_] is not optional."[25]

¶125 The _Bangert_ line of cases sets down relatively simple, relatively "bright-line" rules instructing the circuit courts, the court of appeals, this court, defendants, and counsel about the goals of a plea colloquy, how a plea colloquy should be conducted, and the route to be taken when the plea colloquy is

---

[25] _Brown_, 293 Wis. 2d 594, ¶52.

defective. There is no indication the framework is not working. Once again, I ask, "Why disturb it now?"[26]

¶126 The majority opinion and concurrence have unnecessarily muddied waters often plied, to the detriment of us all. We now have an inconsistent "jurisprudence of flawed plea colloquies" apparently governing an overstatement of a penalty, an understatement of a penalty, a substantial misstatement of a penalty, and an insubstantial misstatement of a penalty. This court is supposed to clarify the law. It has not.

¶127 For the reasons set forth, I dissent.

¶128 I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

---

[26] Cross, 326 Wis. 2d 492, ¶47 (Abrahamson, C.J., concurring).